No. 17,901.

GABRIEL RAY GALLEGOS *v.* PEOPLE OF THE STATE OF COLORADO.

(316 P. [2d] 884)

Decided October 29, 1957.

Mr. NORMAN E. COBB, Mr. BERT A. GALLEGOS, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

THE plaintiff in error, defendant below, and referred to herein as defendant, was tried in the district court in Denver on an information charging him with the crime of murder.

The jury found the defendant guilty of murder in the first degree and fixed the penalty at life imprisonment.

Defendant assigns as grounds for reversal twenty alleged errors of the trial court. We take note of only one.

The trial court submitted the case to the jury on instructions covering murder in the first degree *only* and submitted to the jury *only* three forms of verdict, (1) not guilty, (2) guilty of murder in the first degree with punishment of life imprisonment, and (3) guilty of murder in the first degree with punishment of death.

The trial court refused to give tendered instructions covering (1) murder of the second degree, (2) voluntary manslaughter, and (3) involuntary manslaughter, and also refused to submit to the jury tendered forms of verdicts covering these lesser degrees of the alleged crime.

■ The refusal of the trial court to instruct the jury on the lesser degrees of the alleged crime is error, requiring the verdict and sentence to be set aside and a new trial granted.

The evidence presented by the state and the defendant does not afford a very clear picture of events of the fateful night of June 10, 1955, on which night the victim, Elipio Pacheco, was shot to death by bullets from a gun admittedly held and fired by the defendant.

Testimony of state's witnesses, as well as those of the defense, if believed, establish the fact that Pacheco, on the night in question, was armed with a .22 caliber pistol, and that he had on two or three occasions, and shortly before the fatal shooting, brandished this pistol in front of the defendant and defendant's companions,

and, to punctuate and add emphasis to his warning, "Nobody better mess with me because I will mess you all up with this," fired one or two shots into the air or into the ground.

The defendant testified that while he and his companions were sittting in a car, Pacheco fired a shot at the defendant; the car windows were down at the time and the bullet went in one window, "flew" by defendant's head and out the other window; then and not until then did the defendant return the fire, and he did return the fire to defend himself from Pacheco, who had previously fired at him. In this the defendant was corroborated by one Florez, who was with Pacheco, seeking to have Pacheco go home and desist from further threats and to give up his gun. Florez, who was within a few feet of Pacheco at the time he was shot, testified that he first heard a small noise (presumably the shot from Pacheco's .22 caliber pistol), then a series of loud shots from defendant's .38 caliber pistol. Defendant further testified that he did not intend to shoot Pacheco; that he had no animosity whatsoever toward Pacheco; that he fired because Pacheco had fired at him, and that he was trying to shoot above Pacheco in order to scare him away.

The above testimony was competent and had a direct bearing on the plea of self-defense as well as the question of defendant's guilt or innocence and, if guilty, on the degree of the offense committed. It was within the exclusive province of the jury to determine the weight to be given to the above testimony, to determine the facts surrounding the firing of the fatal shots, and if they determined the facts to be as outlined above then it is difficult to see how defendant could be held guilty of premeditated murder. The defendant was entitled to have the jury pass upon the credibility of the witnesses and to determine, under proper instructions, all questions of fact including the question of the

degree of the offense, as well as the question of his guilt or innocence.

The general rule is well stated in *Crawford v. People*, 12 Colo. 290, 20 Pac. 769:

"* * * When there is any evidence whatever tending to establish a certain statutory grade of criminal homicide, and the court refuses to charge the jury with reference thereto, error is committed; but if there be a total absence of evidence relating to the particular grade disregarded, the charge cannot be successfully challenged on the ground of such omission * * *.

"* * * But where there is an affray, and where self-defense is a defense relied on, the court exercises an exceedingly dangerous prerogative in refusing to charge upon the minor as well as the graver offenses covered by the indictment. He should be absolutely certain that there is an entire absence of evidence bearing upon the particular grade or grades omitted."

We quote with approval the following language from *Henwood v. The People*, 54 Colo. 188, 129 Pac. 1010:

"* * * The constitution and laws of the state provide for the trial of a person charged with murder by a jury. They, and they alone, must determine the facts, and no court, either trial or appellate, has a right to constitute itself a trier of facts, and thus invade the province of a jury. No matter how lightly the court may regard the testimony offered on behalf of the defense, the question of its weight and the credibility of the witnesses is to be determined by the jury, properly instructed as to the law. Unless this course is followed, a defendant is deprived of his constitutional right of a trial by jury. It is manifest there was testimony tending to prove manslaughter. Whether or not it was sufficient to justify a verdict of that character was for the jury to determine, and not the court * * *."

In *Read v. People*, 119 Colo. 506, 205 P (2d) 233, we said:

"There is nothing in our criminal practice more thor-

oughly established or definitely settled than the principle that when there is any evidence, however improbable, unreasonable or slight, which tends to reduce the homicide to the grade of manslaughter, the defendant is entitled to an instruction thereon upon the hypothesis that the same is true, and that it is for the jury, under proper instructions, and not the trial judge, to weigh and consider the evidence and determine therefrom what grade of crime, if any, was committed; and that the court's refusal to instruct thereon is reversible error * * *."

The attorney general, appearing herein in behalf of The People, properly admit that the trial court was in error in refusing to instruct the jury on the lesser degrees of the crime.

The judgment is reversed and the cause remanded with directions that a new trial be granted.

Mr. Justice Knauss not participating.