**Antonio MATA–MEDINA, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 01SC702.**

Supreme Court of Colorado, En Banc.

June 2, 2003.

As Modified on Denial of Rehearing June 30, 2003.

David S. Kaplan, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

Ken Salazar, Attorney General, Lauren E. Park, Assistant Attorney General, Deborah Isenberg Pratt, Assistant Attorney General,

Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

In this case, a jury convicted Antonio Mata–Medina of the second-degree murder of Mandy Gettler on August 29, 1996. The trial court sentenced Mata–Medina to thirty-two years in the Department of Corrections. Mata–Medina appealed his conviction to the court of appeals, which affirmed. *People v. Medina*, 51 P.3d 1006 (Colo.App.2001).[1] The defendant sought certiorari before this court on two issues: whether the trial court erred in refusing his tendered instruction on criminally negligent homicide; and whether the evidence was sufficient to support his conviction for second-degree murder. We now determine that the trial court did err in refusing to instruct the jury on criminally negligent homicide; however, because the jury considered but rejected the intermediate offense of reckless manslaughter, we determine that such error was harmless as a matter of law. We also hold that the evidence was sufficient to support the conviction. Accordingly, we affirm the court of appeals and uphold the conviction.

## I. Facts

On August 29, Antonio Mata–Medina, Mandy Gettler, Ms. Gettler's boyfriend, Hector Hernandez, and other friends attended a party. The men were relaxing in the yard and drinking. At some point in the evening, Mandy Gettler, Hector Hernandez, Sabino Hernandez and Mata–Medina went to a park. At the park, Gettler had sex with her boyfriend, while the other two men waited. They flipped a coin to see who would approach her next.

Defendant, Antonio Mata–Medina, won the coin toss and Sabino Hernandez departed. When Mata–Medina attempted to have intercourse with Gettler, he was unable to achieve an erection. She laughed and attempted to excite him; however, he was unresponsive and they abandoned the effort.

Mata–Medina, Hector Hernandez and Gettler then left the park to walk home together. Hernandez testified that he walked with Gettler, and the two were laughing at Mata–Medina. Mata–Medina did not say anything, and appeared "[m]aybe embarrassed a little" but did not seem angry. Hernandez reached his home first and said he left Gettler and Mata–Medina alone. That was the last time Hernandez saw Gettler alive.

Later, Mata–Medina returned to his home. His wife noted that he had been drinking but did not appear drunk. He told her to come in the bedroom with him, where he lay down in bed but did not get under the covers.

She awoke the next morning when Mata–Medina's friends called to see if he was coming to work. At that point, Mata–Medina was gone. He had taken the couple's van. At about ten o'clock that morning, she received a phone call from her husband asking her to call a taxi for him because the van had become stuck in the mud.

Soon afterwards, the taxi arrived with her husband and she paid the fare. He confessed that "there had been an accident," and that he had killed Mandy Gettler. Mata–Medina's wife testified at trial that at that time Mata–Medina said he had been at a party "and the girl was asking for money, and she kept hitting him in the chest and he was trying to walk away, and he told her to get out of his face, and he finally had enough, and then he punched her in the throat, and she fell down, and he left."

No one called the police. Mata–Medina convinced his wife to rent a chainsaw, and take a cab to where he had abandoned the van. With the chainsaw, they freed the van from barbed wire where it was entangled. A few days later, they returned to that location and Mata–Medina retrieved the body in a wheelbarrow from its initial location. He and his wife placed it in the van, then drove to a bridge. The two threw the body over the side of the bridge, where it landed on dry ground. Mata–Medina went under the bridge and buried the body and then disposed of the victim's clothing.

---

1. Judge Taubman dissented.

Two weeks after August 29, the couple moved to New Mexico. Throughout the course of these events, Mata–Medina's wife questioned him about what had happened and later testified that he gave her multiple conflicting versions of the events. The defendant's other versions of what happened each varied slightly from his original story. He stated that the victim had wanted $100 for sex and harassed him because he didn't have any money, following him, grabbing at his wallet, and hitting him in the chest. He pushed her away, hitting her in the chest and she fell. In another version, he got into a fight with a friend. He said the victim was pushed when she tried to break up the fight and then she hit her head.

Eventually, Mata–Medina and his wife moved back to Colorado, where his wife cooperated with police to recover the body. A team of archaeologists exhumed Gettler's body seven months after her death.

Mata–Medina was arrested and charged with second-degree murder. At trial, the judge instructed the jury on the lesser included offense of reckless manslaughter; however, he refused to give an instruction on criminally negligent homicide. After twice informing the court they were deadlocked and being told to continue deliberations, the jury returned a verdict of guilty on the second-degree murder charge.

Mata–Medina appealed, arguing both that he was entitled to an instruction on criminally negligent homicide and that there was insufficient evidence to convict him of second-degree murder. The court of appeals affirmed, finding that the failure to instruct was harmless as a matter of law and that the evidence was sufficient to support the verdict. Mata–Medina appealed to this court and we granted certiorari.[2] We now conclude that Mata–Medina was entitled to an instruction on criminally negligent homicide; however, because the jury was given the opportunity to consider but rejected the less-er included offense of reckless manslaughter, thereby finding the presence of all the elements of second-degree murder, we determine that the error was harmless as a matter of law.

## II. Entitlement to the Instruction

■ Defendant argues that he was entitled to a criminally negligent homicide instruction because the evidence offered could support an acquittal of knowing and reckless homicide. He maintains that his theory of the case would support a conviction for criminally negligent homicide.

Specifically, the defendant notes that Dr. Robert Stewart, who performed the autopsy on the remains of the victim testified that she had not been shot or stabbed; however, because of the advanced state of decay, the doctor stated he could not draw any further conclusions with certainty. The doctor did testify that no bones had been broken, and that she did not die from a blow to the head or a severe jerking of the neck.

At trial, in response to questions about whether the victim might have died from a shove to her chest or neck, the doctor reported that some people can suffer a reflex phenomenon from a blow that causes instant death, and leaves no identifiable mark on the body. The blow could come from a closed fist, open palm, or flat of the hand. The doctor explained that there is no way to tell, looking at a person, whether she is susceptible to this condition.

Accordingly, the defendant argues that the evidence could support a conclusion that he did not understand the degree of risk that his behavior courted, because he could have struck Gettler in the chest or neck without realizing that such a blow could cause death.

To the contrary, the People argue that the defendant was not entitled to the instruction because there was no factual evidence that Mata–Medina did not understand that his actions, including an alleged blow to the

---

**2.** We granted certiorari on the following issues:
1) Whether the court of appeals erred when it affirmed the petitioner's second-degree murder conviction, despite the trial court's failure to instruct the jury on the lesser-included offense of criminally negligent homicide.

2) Assuming it was error, was the failure to instruct the jury on the lesser-included offense of criminally negligent homicide constitutional error.
3) Whether the evidence was insufficient to sustain a verdict of second-degree murder.

neck, could cause death; or stated otherwise, no evidence that he failed to perceive a substantial and unjustifiable risk that his actions might cause the death of the victim.

■ The defendant is entitled to an instruction supported by a reasonable construction of the evidence; therefore, we agree with Petitioner.

### A. Distinguishing the Offenses

A person commits criminally negligent homicide when he "causes the death of another person by conduct amounting to criminal negligence." § 18–3–105, 6 C.R.S. (2002). Criminally negligent homicide is a class 5 felony. *Id.* Criminal negligence is a state of mind that exists when "through a gross deviation from the standard of care that a reasonable person would exercise, he fails to perceive a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18–1–501(3). By contrast, a person commits reckless manslaughter, a class 4 felony, when he "recklessly causes the death of another person." § 18–3–104(1)(a). A person acts recklessly in this context "when he consciously disregards a substantial and unjustifiable risk" that his actions will cause death. § 18–1–501(8). Second-degree murder is a class 2 felony,[3] which requires a showing that the defendant knowingly caused the death of the victim. § 18–3–103.

■ We recently explained in detail the statutory elements of reckless manslaughter, which are distinguishable from criminally negligent homicide only by degree of culpability. In *People v. Hall,* 999 P.2d 207, 215–16 (Colo.2000), we explained that to determine whether a risk was substantial and unjustifiable, the "trier of fact must weigh the likelihood and potential magnitude of harm presented by the conduct and consider whether the conduct constitutes a gross deviation from the reasonable standard of care." The fact finder must consider the facts and circumstances of the individual case, both to weigh the magnitude of the harm against its likelihood, and to determine whether the risk was "consciously" disregarded. *Id.* at 211.

To find the risk unjustifiable, the fact finder must find that the nature of the risk was so substantial as to be unjustified in relation to the nature and purpose of the actor's conduct. *Id.* at 217. In considering whether the risk was consciously disregarded, the fact finder may infer the "actor's subjective knowledge of the risk or [consider] what a reasonable person with the actor's knowledge and experience would have been aware of in the particular situation." *Id.* at 216.

■■ In contrast, to constitute murder in the second degree the actor must "knowingly cause[ ] the death of a person." § 18–3–103(1). A person acts knowingly when "he is aware that his conduct is practically certain to cause the result." § 18–1–501(6). Thus there are two elements of second-degree murder, "[f]irst, the death must have been more than merely a probable result of the defendant's actions. Second, the defendant must have been aware of the circumstances that made death practically certain." *People v. Dist. Ct.,* 652 P.2d 582, 586 (Colo.1982). The first element is objective; the second is subjective. *Id.* For the subjective component, "the People need not provide direct evidence of the defendant's state of mind. . . . . [T]he defendant's subjective awareness may be inferred from his conduct and surrounding circumstances." *Id.*

■ In sum, the mens rea with which the defendant acted in relation to the risk determines his degree of culpability. Distinguishing criminally negligent homicide from reckless manslaughter, "[a]n actor is criminally negligent when he should have been aware of the risk but was not, while recklessness requires that the defendant actually be aware of the risk but disregard it." *Hall,* 999 P.2d at 219–20. Further, distinguishing manslaughter from second-degree murder, the actor commits murder not by disregarding some risk of death, but by engaging in conduct he knows is practically certain to cause death.

■ When a defendant's actions result in death, criminally negligent homicide is the least culpable criminal offense for which he

---

**3.** Second-degree murder is a class 3 felony where the act causing the death was performed upon a sudden heat of passion: an element not at issue here.

may be held liable. Criminally negligent homicide is a class five offense, on a par with first-degree assault committed in the heat of passion. § 18–3–105; § 18–3–202(2)(a). It is a lesser offense than first-degree assault (class 3),[4] vehicular homicide (class 4),[5] or second-degree assault (class 4).[6]

This court has long held that "the refusal to instruct on a lesser included offense in a homicide case is reversible error as long as there is some evidence, however slight, tending to establish the lesser included offense." *People v. Shaw,* 646 P.2d 375, 379 (Colo. 1982). Various court of appeals' cases demonstrate circumstances in which courts have required the giving of a criminally negligent homicide instruction when the facts clearly identified the guilty party as the perpetrator, the cause of death was known, and the defendant's actions suggested a higher degree of culpability than defendant argues here. *See, e.g., People v. Castro,* 10 P.3d 700 (Colo.App. 2000) (finding reversible error when trial court declined to give requested criminally negligent homicide instruction in case where defendant shot victim with a gun but the evidence could have supported a finding that the defendant did not perceive that death would result); *People v. Mares,* 705 P.2d 1013, 1015 (Colo.App.1985) (finding reversible error for refusal to give instruction on manslaughter or criminally negligent homicide in case where defendant stabbed victim multiple times).

When considering whether a defendant is entitled to his proffered instruction, the trial court must consider the evidence in the light most favorable to the defendant. If there is "any evidence whatever tending to establish a certain statutory grade of criminal homicide" the defendant is entitled to an instruction thereon, regardless of how "incredible or unreasonable" his contention may be, *Crawford v. People,* 12 Colo. 290, 293, 20 P. 769, 770 (1889), or how "improbable, unreasonable or slight" it might be. *People v. Garcia,* 826 P.2d 1259, 1262 (Colo.

1992) (quoting *Shaw,* 646 P.2d at 380 (quoting *Read v. People,* 119 Colo. 506, 509, 205 P.2d 233, 235 (1949))). This court has declared,

> There is nothing in our criminal practice more thoroughly established or definitely settled than the principle that when there is any evidence however improbable, unreasonable or slight, which tends to reduce the homicide to the grade of manslaughter, the defendant is entitled to an instruction thereon upon the hypothesis that the same is true, and that it is for the jury, under proper instructions, and not the trial judge, to weigh and consider the evidence and determine therefrom what grade of crime, if any, was committed; and that the court's refusal to instruct thereon is reversible error.

*Read,* 119 Colo. at 509, 205 P.2d at 235. This contention was reaffirmed in *Ferrin v. People,* 164 Colo. 130, 136, 433 P.2d 108, 111 (1967), wherein the court also observed, "Cases which are 'all white or all black'— either murder or nothing—are not of frequent occurrence; we need only note the many, many decisions in which we have said the lesser degrees of the crime must be submitted in the instructions." *Id.* (reversing for jury to consider heat of passion manslaughter).

## B. Application to this Case

In this case, the trial court erroneously concluded that when a defendant commits an affirmative act such as pushing the victim in the throat or chest, he is not entitled to an instruction on negligence. As these other cases illustrate, the proper focus is not whether the act resulting in death was affirmative in nature, but rather what the defendant's state of mind was at the time of the incident.

In this case, the defendant's wife testified that he repeatedly told her that the death was an accident. It is possible, based on the

---

**4.** § 18–3–202(1)(b), (2)(b) (intent to disfigure another seriously and permanently).

**5.** § 18–3–106(1)(a), (1)(c) (driving in a reckless manner that proximately causes the death of another).

**6.** § 18–3–203(1)(d), (2)(b) (recklessly causing serious bodily injury using a deadly weapon).

evidence, that the defendant struck the victim in the chest or neck in some fashion, and she experienced an unpredictable and fatal reaction to that blow. Further, the jury might have believed any of the defendant's various confessions, for instance, that the victim was hitting him, grabbing for his wallet, and that he merely pushed her away and she fell. Any of these stories were potentially consistent with a failure to perceive a risk of death. The evidence could support a construction of facts that would accord with defendant's theory of a criminally negligent act.

### III. Consequences of Error

 Since we hold that the defendant was entitled to an instruction on criminally negligent homicide, we must consider whether the trial court's failure to instruct the jury on criminally negligent homicide is reversible error. When the trial court errs in failing to give a jury instruction that the defendant requested and to which he was entitled, the appellate court reviews that error under a harmless error standard. *People v. Garcia,* 28 P.3d 340, 344 (Colo.2001). Pursuant to that standard, the defendant is entitled to have his conviction reversed only if the error affected his substantial rights. Crim. P. 52(a). Where the error is not of constitutional dimension, it will be disregarded if there is not a reasonable probability that it contributed to the defendant's conviction. *Garcia,* 28 P.3d at 344.

The United States Supreme Court has held that in capital cases, it is constitutional error to refuse to instruct the jury on any lesser offense, as such refusal forces the jury into an all-or-nothing decision between capital murder and innocence. *Beck v. Alabama,* 447 U.S. 625, 637, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). However, the Court has reserved judgment on whether defendants in non-capital cases are constitutionally entitled to lesser offense instructions. *Id.* at 638 n. 14, 100 S.Ct. 2382. Further, in *Schad v. Arizona,* 501 U.S. 624, 646–47, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), another death penalty case, the Court determined that when the jury is given a third option, in the form of a noncapital lesser included offense instruction

supportable by the evidence, the considerations of Beck are not implicated.

Defendant argues that the harmless error standard should not apply to these facts, because under Colorado law a defendant is constitutionally entitled to have a jury decide all material facts. He therefore argues the jury must consider all warranted lesser offense instructions. In support of this proposition, Petitioner relies chiefly upon *Gallegos v. People,* in which this court concluded, "The refusal of the trial court to instruct the jury on the lesser degrees of the alleged crime is error, requiring the verdict and sentence to be set aside and a new trial granted." 136 Colo. 321, 322, 316 P.2d 884, 884 (1957).

In *Gallegos,* this court reversed a conviction based on a jury's consideration of first-degree murder, exclusively. The trial court refused to instruct the jury on second-degree murder or any other lesser offense despite the defendant's testimony that the victim fired the first shot and that he fired in response only in an attempt to frighten him away. This court held that the jury was entitled to consider this testimony and determine its credible weight. Because Galegos did not involve a circumstance in which the jury received an intermediate offense instruction and declined to convict on that charge, it is not instructive.

Here, we address only the circumstance where a jury receives an instruction on an intermediate offense and declines to render a conviction on that offense. In light of Beck and Schad, we find no constitutional error here, as the defendant received an instruction on an intermediate offense, which was rejected by the jury. Since we find no constitutional error, the error in instruction is reversible only if there is a reasonable probability the error contributed to the conviction.

### IV. Application

We are thus left to determine whether there is a reasonable probability that the trial court's failure to instruct the jury on criminally negligent homicide contributed to the jury's verdict, or whether, as the People argue, the jury's consideration of the reckless manslaughter instruction cured the error. The jury considered and declined to

convict on reckless manslaughter, which was an intermediate offense—not as culpable as second-degree murder, but more culpable than criminally negligent homicide. Instead, the jury entered a conviction on the greater offense, second-degree murder.

In cases where the jury receives an intermediate offense instruction, but still convicts on the greater offense, this court has previously held that the failure to give the lesser instruction is not inherently prejudicial. In *People v. Favors*, 192 Colo. 136, 556 P.2d 72 (1976), the defendant was convicted of first-degree murder after the jury considered both first and second-degree murder. The trial court refused to instruct the jury on criminally negligent homicide. This court opined, "Failure to instruct on an even less serious offense than second-degree murder, in light of the jury's verdict for [first-degree murder], does not comport with an inference of prejudice and did not deny the defendant a fair trial." *Id.* at 140, 556 P.2d at 75.[7]

The court of appeals later considered the interplay among offered and refused instructions on variations of an offense in *People v. Gordon*, 765 P.2d 633 (Colo.App.1988) and reached the same conclusion. In *Gordon*, the defendant was charged with and convicted of second-degree murder. The trial court refused to instruct the jury on reckless manslaughter, but did instruct on heat of passion manslaughter, and criminally negligent homicide. The defendant was charged with chasing the victim in his car and ultimately crushing her between the car and the outside of her house. The incident occurred after the defendant had allegedly beaten the victim and she had shot a gun at him, but missed. The court of appeals concluded that the failure to give a reckless manslaughter instruction was error, because the evidence could

support an inference that the defendant intended only to frighten the victim and disregarded the substantial risk that he might hit her and cause her death. The People argued that the failure to offer the instruction was harmless error because the jury rejected both heat of passion manslaughter and criminally negligent homicide. The court of appeals held that since heat of passion manslaughter was not a lesser included offense of second-degree murder and was equal in grade to reckless manslaughter, the jury's rejection of heat of passion manslaughter carried no indication of what it would have done with reckless manslaughter.

In short, the jury was not instructed on an intermediate offense between second-degree murder and reckless manslaughter. When the court fails to instruct on an intermediate offense, conviction of a greater offense does not carry the same implicit rejection of lesser offenses. As the court of appeals explained, implicit rejection occurs only:

in a case in which the jury has convicted a defendant of an offense higher than an included offense on which there was an instruction, and there is still a lesser included offense on which there was no instruction. In such a case, the selection by the jury of the highest available grade of the offense constitutes a rejection of the next lower included offense and of all lesser offenses included within the latter.

*Id.* at 635.

In the case at bar, we have such a circumstance, where the jury rejected reckless manslaughter in favor of second-degree murder, leading to an implication that it would also have rejected the still lesser included offense of criminally negligent homicide.

7. For decades, this court has held that when "there is evidence tending to establish a statutory grade of homicide, the court's refusal to instruct thereon is error." *Baker v. People*, 114 Colo. 50, 56, 160 P.2d 983, 986 (Colo.1945) (citing earlier precedent). We observed that "when there is any evidence, however improbable, unreasonable or slight, which tends to reduce the homicide to the grade of manslaughter," it was reversible error not to instruct the jury on the lesser offense. *Read v. People*, 119 Colo. 506, 509, 205 P.2d 233, 235 (Colo.1949). In those various cases, we did not consider any curative effect

that an intermediate offense instruction might have produced. *See also People v. Miller*, 187 Colo. 239, 529 P.2d 648 (Colo.1974); *Sanchez v. People*, 172 Colo. 168, 470 P.2d 857 (Colo.1970); *Ferrin v. People*, 164 Colo. 130, 433 P.2d 108 (Colo.1967). Ultimately, first in *People v. Mullins*, 188 Colo. 23, 26, 532 P.2d 733, 735 (Colo. 1975), and then more dispositively in *Favors*, 192 Colo. at 140, 556 P.2d at 75, we expressly considered and determined that a jury's rejection of an intermediate offense in favor of a greater offense carries an implication that it would also reject offenses lesser to the intermediate offense.

We recently confirmed that appellate courts can acknowledge implicit jury findings. In *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003), we concluded that when "the jury found that [defendant] acted intentionally, or with the conscious objective of causing death, the jury implicitly found that [defendant] acted knowingly." Following our earlier holding in *Crespin v. People*, 721 P.2d 688, 692 (Colo.1986), we concluded that while defendant's conviction of first-degree murder was void, the People could elect either to retry the defendant or to accept a conviction on the lesser offense of second-degree murder, as the jury's conviction for first-degree murder implicitly carried with it a conviction for second-degree murder. *See also People v. Bowers*, 187 Colo. 233, 238, 530 P.2d 1282, 1285 (1974) ("The jury, by finding appellant guilty of the greater offenses, necessarily found he was guilty of the lesser offenses. Under these circumstances, as a matter of law the appellant was guilty of the lesser offenses. It is, therefore, unnecessary to have a retrial of the lesser offenses.").

Courts across the country agree that jury convictions for a certain charged offense inherently constitute a rejection of offered lesser offenses, or findings that the defendant was necessarily guilty of lesser included offenses. Quite recently, the Utah Supreme Court considered the issue in *State v. Daniels*, 40 P.3d 611 (Utah 2002). In that case, the jury received an instruction on aggravated murder and the lesser included offense of murder, and convicted on aggravated murder. The defendant argued that he was entitled to an instruction on manslaughter as well. The court held it was error not to provide such an instruction, but it was harmless error because the jury considered and rejected the intermediate offense of murder, and therefore the jury "obviously would not have chosen manslaughter." *Id.* at 620. Without any reliance upon any factual review of the case, the court stated that:

> Where a jury is instructed on, and has the opportunity to convict a defendant of, a lesser included offense, but refuses to do so and instead convicts the defendant of a greater offense, failure to instruct the jury on another lesser included offense, particularly an offense that constitutes a lesser included offense of the lesser included offense that the jury was instructed on, is harmless error.

*Id.*

In two near contemporaneous cases in 1998, the Missouri Supreme Court confirmed the same principle. In the first case, *State v. Jones*, 979 S.W.2d 171 (Mo.1998), the Supreme Court of Missouri held that it was not error for the trial court to fail to give a voluntary manslaughter instruction when the jury was instructed on both first-degree murder and second-degree murder and chose first-degree murder. The court explained that when the jury rejects an intermediate instruction, "no reasonable basis exists to suggest that the jury would have reduced the conviction had they been presented with" an instruction on an even lesser offense. *Id.* at 185. In the second case, in which the defendant was also convicted of first-degree murder after the jury was instructed on both first and second-degree murder, the court observed, "We have consistently held that when 'a jury convicts on first-degree murder after having been instructed on both first degree and second-degree murder, there is no prejudice to the defendant by the refusal to submit a second degree felony murder instruction.'" *State v. Hall*, 982 S.W.2d 675, 682 (Mo.1998) (quoting *State v. Kinder*, 942 S.W.2d 313, 330 (Mo.1996)).

In two other cases, state supreme courts have recognized in dicta that failure to give a lesser included offense instruction is harmless when the jury receives an instruction on an intermediate offense and chooses instead to convict on the greater offense. In *State v. Allen*, 69 S.W.3d 181, 191 (Tenn.2002), the Tennessee Supreme Court observed that: "A reviewing court may find the error harmless because the jury, by finding the defendant guilty of the highest offense to the exclusion of the immediately lesser offense, necessarily rejected all other lesser-included offenses." Similarly, in *People v. Cornell*, 466 Mich. 335, 646 N.W.2d 127, 144 n. 19 (2002), the Michigan Supreme Court opined that "no intermediate lesser instructions were given in this case. If other lesser instructions had been given and been rejected by the jury, consid-

eration of the 'entire cause' would likely lead us to conclude that the error did not undermine the reliability of the verdict."

Some courts have gone even farther, finding harmless error even when no intermediate instruction was offered.[8] The Hawaii Supreme Court based its reasoning on the fact that

> jurors are presumed to follow the court's instructions, and, under the standard jury instructions, the jury 'in reaching a unanimous verdict as to the charged offense [or as to the greater included offense, would] not have reached, much less considered,' the absent lesser offense on which it should have been instructed.

*State v. Pauline,* 100 Hawai'i 356, 60 P.3d 306, 331 (2002) (quoting *State v. Haanio,* 94 Hawai'i 405, 16 P.3d 246, 256–57 (2001) (quoting *State v. Holbron,* 80 Hawai'i 27, 904 P.2d 912, 932 (1995))).[9]

Thus, courts throughout the country that have considered the issue have concluded that a jury's rejection of an intermediate offense constitutes an implicit rejection of omitted lesser offenses.

We agree. The jury convicted the defendant of second-degree murder, rejecting reckless manslaughter. The jury considered and rejected the argument that the defendant was guilty of reckless manslaughter, but rather found him guilty beyond a reasonable doubt of knowingly committing murder. In considering and declining a reckless manslaughter conviction and choosing the greater offense, the jury implicitly rejected criminally negligent homicide. We conclude as a matter of law that any error resulting from the trial court's failure to provide an instruction on criminally negligent homicide under these circumstances was harmless.

## V. Sufficiency of the Evidence

■■■ Mata–Medina argues not only that he was entitled to an instruction on criminally negligent homicide, but also that there was insufficient evidence to support a conviction for second-degree murder. As noted above, second-degree murder requires a finding that the defendant was practically certain that his actions would result in death. Because jury verdicts deserve deference and a presumption of validity, we review the sufficiency of the evidence in the light most favorable to the prosecution in order to evaluate defendant's contention. The conviction must be upheld "if there is substantial evidence in the record, viewed in the light most favorable to the prosecution, that supports the verdict." *People v. Fuller,* 791 P.2d 702, 706 (Colo.1990); *see also People v. Madson,* 638 P.2d 18, 26 (Colo.1981).

The state offered evidence that the defendant, a medium-sized male, pulled back the hair of a petite female and struck her in the neck with his fist. When she lay helpless on the ground, he did not call for medical assistance or alert her nearby friends and family. Instead, he hid the body under a cover of leaves and branches, went home and lay in

---

**8.** Our precedent, as outlined above, would hold otherwise.

**9.** In a related line of cases, courts have dealt with the issue of whether the rejection of a comparable lesser included offense by the jury vitiates any prejudice associated with failure to give a requested instruction. In these cases, there is no intermediate offense instruction, but there is rather an instruction on an alternative offense with a lesser degree of culpability than the charged offense. *See Commonwealth v. Chase,* 433 Mass. 293, 741 N.E.2d 59, 66 (2001) ("The error itself, failure to instruct on involuntary manslaughter, was of little significance because the jury had another comparable option—the motor vehicle homicide charge—that was a lesser charge than the murder indictment."). The Pennsylvania Supreme Court reached the same conclusion in *Commonwealth v. Counterman,* 553 Pa. 370, 719 A.2d 284 (1998). In

*Counterman,* a man was convicted of three counts of murder in the first degree after he set his home on fire, killing his three children. Although Pennsylvania law at the time required the court to offer an instruction on voluntary manslaughter based on heat of passion, the supreme court ruled that the trial court's failure to provide such an instruction was reversible only if the defendant suffered prejudice. The court concluded that the defendant could not establish prejudice, since the jury was instructed on the lesser offense of murder in the third degree, unlawful killing with malice. The court observed that there was no reason to believe the jury would have been swayed by sympathy or would have recognized mitigating factors sufficient to reduce the conviction when those same factors did not convince them to find the lesser offense that they were offered. *Id.* at 304.

bed until his wife fell asleep, then took her van to dispose of the body, and later reburied the body: all with the presumed intent of preventing detection.

This construction of the evidence was sufficient for the jury to find that the defendant was aware that by hitting the victim as and how he did, his conduct was practically certain to cause her death. The evidence supports a conclusion that the defendant was angry, humiliated and violent. Hence, under the applicable standard of review, we do not find the evidence insufficient to support the verdict.

## VI. Conclusion

The defendant was entitled to an instruction on criminally negligent homicide; however, because the jury did consider reckless manslaughter and reject it in favor of second-degree murder, such error is harmless.

Further, the evidence was sufficient to support the conviction for second-degree murder, when viewed in the light most favorable to the prosecution.

Accordingly, we affirm the court of appeals and uphold defendant's conviction.

Justice MARTINEZ dissents, and Justice BENDER joins in the dissent.

Justice MARTINEZ dissenting.

A jury convicted Antonio Mata–Medina of second degree murder for Mandy Gettler's death. At trial, the material facts were undisputed and only the degree of Mata–Medina's culpability was at issue. Mata–Medina's defense, pertinent to the issue before us today, was that Gettler's death was an accident because he was not aware that she could die from his injury to her neck. On the contrary, the prosecution argued Mata–Medina was aware that such an injury could cause Gettler's death.

The trial court instructed the jury on Mata–Medina's affirmative defense and the offenses of second degree murder and the lesser included offense of reckless manslaughter. However, the court refused to grant an instruction on criminally negligent homicide. For its failure to grant that in-

struction, the majority concludes that the trial court erred because the "evidence could support a construction of facts that would accord with defendant's theory of a criminally negligent act." Maj. op. at 979–980.

I write to express my disagreement with the majority's further conclusion that the error was harmless. To determine the effect of a harmless error at trial, our jurisprudence dictates that we review the facts for a determination of whether there is a substantial probability that the error affected the verdict. In contrast, the majority assumes, without factual review, that because the jury rejected the lesser included offense of reckless manslaughter in favor of second degree murder, the jury implicitly rejected criminally negligent homicide—notwithstanding its own assertion that the "evidence could support a construction of facts that would accord with defendant's theory of a criminally negligent act." Maj. op. at 979–980.

Such perfunctory analysis is simply not harmless error review of this case. A categorical rule that it is always harmless error to fail to instruct on a lower grade lesser included offense whenever a jury rejects an intermediate one is a functional one and usually arrives at a correct result. However, the case before us is an exception to that generality.

A proper harmless error analysis reveals that whether Mata–Medina was aware that his actions entailed a risk of death was the crux of the trial. A fundamental difference in mens rea requirement exists between criminally negligent homicide on the one hand, and both second degree murder and reckless manslaughter, on the other. While criminally negligent homicide does not require awareness of the risk of death, both second degree murder and reckless manslaughter do require awareness of the risk of death.

The jury never considered that distinction because the trial court usurped the jury function. Mata–Medina's substantial rights were affected when the trial court determined on its own the viability of his theory of defense. The error is a reversible one, and therefore, I respectfully dissent.

## I. Harmless Error Standard

Based on our century-old jurisprudence that requires reversal when a trial court fails to give an instruction on a lesser included offense supported by some evidence, I would find the error here of constitutional magnitude, subject to the standard of whether the prosecution proves beyond a reasonable doubt that this error did not contribute to the verdict. *Blecha v. People*, 962 P.2d 931, 942 (Colo.1998). The inquiry is not whether is it possible the jury would have found Mata-Medina guilty of second-degree murder had the error not occurred; rather the inquiry is whether in the absence of the error, the jury would have beyond a reasonable doubt found Mata-Medina guilty of second-degree murder. *People v. Harlan*, 8 P.3d 448, 491–92 (Colo.2000).

Prior to this case, we had always found reversible error if the evidence supported the giving of a lesser included offense.[1] As such, the standard for reversal was whether the lesser included offense that was not submitted to the jury had evidentiary support in the record. That standard is a low one and suggests a constitutional harmless error analysis to protect a defendant's right to present his theory of defense to the jury. Therefore, the standard of review of harmless error employed by the majority in this case is unprecedented in our case law and in my view unwarranted.

In addition, I disagree with the majority's conclusion that the failure to instruct on a lesser included offense that was also the defendant's theory of the case was harmless error under the standard adopted by the majority today. Because I would find the error here reversible under either the constitutional or the lower harmless error standard, I explain below that the error was not harmless under the standard the majority employs.

Harmless error is any error that does not affect a substantial right of a party. Crim. P. 52(a). Assuming that a failure to instruct on a lesser included offense is not of constitu-

tional dimension, an "error will be disregarded if there is not a reasonable probability that the error contributed to the defendant's conviction." *Salcedo v. People*, 999 P.2d 833, 841 (Colo.2000).

Evaluating whether a reasonable probability exists that an error substantially influenced the verdict or affected the fairness of the proceeding requires an individualized prejudice assessment, including a review of the evidence presented at trial, the defendant's theory of the case, and the verdict returned by the jury. Upon conducting the proper review in this case, it becomes apparent that the application of a harmless error analysis that includes a categorical rule results in an erroneous resolution of the issue before us.

## IV. The Harmless Error Standard Applied

### A. The Evidence at Trial

The cause of Mandy Gettler's death is unknown. However, the prosecution presented uncontroverted evidence that Mata–Medina affirmatively struck Gettler in the neck, knowing that he was striking her. The prosecution also proffered extensive circumstantial evidence of Mata–Medina's attempt to avoid detection through his actions to conceal Gettler's death. He never called the police, but left her covered by leaves and branches in the drizzling rain. He reburied her in a hurried grave, her body in an unnatural position. He fled to New Mexico. Finally, Terri, his ex-wife, testified that Mata–Medina suffered from insomnia and nightmares of ghosts that would "get him like he got her."

However, Terri also testified that Mata–Medina related to her on numerous occasions that Gettler's death was an accident. Additionally, nothing in the testimony established the cause of Gettler's death, including the testimony of Detective Salbato, who witnessed the exhuming of Gettler's body, or the testimony of an archeologist, who managed

---

1. In section II.B, I cite to numerous cases in which the failure to give a lesser included offense constituted reversible error. These include *People v. Shaw*, 646 P.2d 375 (Colo.1982), *Read v. People*, 119 Colo. 506, 205 P.2d 233 (1949) and *Crawford v. People*, 12 Colo. 290, 20 P. 769 (1889).

the excavation of the body, as the body was fully articulated and no weapons were discovered with the body. Finally, a forensic pathologist, Dr. Stewart, similarly testified that the cause of death was uncertain. Gettler had no fractures or any holes or wounds in the skin—which remained intact notwithstanding the badly decomposed nature of the body. Stewart stated that a blow to the neck may cause sudden cardiac arrest, but that it would not be within the knowledge of the ordinary person that such a blow would lead to freakish, instantaneous, and unpredictable death. "What happens is there are bundles of nerves in the neck that control your breathing, your heart beat, majority of body functions called vagal nerves, and you get a reflex action from trauma to those nerves that can cause death very quickly." Therefore, evidence also supported Mata–Medina's defense that his actions occurred in an accident due to criminal negligence.

In sum, the presentation of evidence indicates that the central dispute at trial concerned whether Mata–Medina failed to perceive the risk that his actions could cause Gettler's death, as the defense contended, or whether he was aware of that risk and thus killed Gettler knowingly or recklessly, as the prosecution claimed.

## B. The Criminally Negligent Homicide Instruction & The Defendant's Theory of the Case

The majority agrees that an instruction on criminally negligent homicide was required because it comported with Mata–Medina's theory of defense. I now proceed to discuss the nature of this offense in comparison to the offenses upon which the jury was instructed to show that the jury here was never permitted to determine the crux of the case—whether Mata–Medina failed to perceive the risk of Gettler's death, but was nonetheless guilty of a lesser offense.

The jury was instructed on the offenses of second degree murder and reckless manslaughter. "A person commits the crime of murder in the second degree if the person knowingly causes the death of a person." § 18–3–103, 6 C.R.S. (2002). Presuming Mata–Medina "cause[d] the death of" Gett-

ler, the jury evaluated whether he did so "knowingly." A person acts knowingly "with respect to conduct ... when he is *aware* that his conduct is practically certain to cause the result." § 18–1–501(6), 6 C.R.S. (2002) (emphasis added).

An awareness of the risk of death is also required when a person commits reckless manslaughter. "A person commits the crime of manslaughter if such person recklessly causes the death of another person." § 18–3–104, 6 C.R.S. (2002). Again, assuming that Mata–Medina "cause[d] the death of" Gettler, the death was committed recklessly if he "*consciously disregard[ed]* a substantial and unjustifiable risk that a result will occur." § 18–1–501(8) (emphasis added). Both second degree murder and reckless manslaughter require awareness of the risk of death as a result of conduct.

In contrast, criminally negligent homicide requires that a person cause the death of another when, through a gross deviation from the standard of reasonable care, he fails to perceive a substantial and unjustifiable risk that death will result from certain conduct. §§ 18–3–105, 18–1–501(3), 6 C.R.S. (2002). The divide in mens rea between reckless manslaughter and second degree murder, on one side, and criminal negligence, on the other, is significant when the issue is awareness, and not a mere variation in degree, as it would be were the issue the extent of the risk. *People v. Shaw*, 646 P.2d 375, 380 (Colo.1982) ("distinction between acting recklessly and acting with criminal negligence is the difference between, on the one hand, becoming aware yet consciously disregarding a substantial and unjustifiable risk of death from one's conduct, and, on the other, failing to perceive, through a gross deviation from the reasonable care standard, a substantial and unjustifiable risk that death will result from one's conduct"); *People v. Bettis*, 43 Colo.App. 104, 602 P.2d 877, 878 (1979) (between recklessness and criminal negligence "the distinction is between becoming aware of a risk yet consciously choosing to disregard it as opposed to negligently failing to become aware of the risk.").

In light of the facts of this case, the difference in culpability requirements between the

offenses is sufficiently different that a jury did not reject the defense theory that the defendant was guilty of criminally negligent homicide. Specifically, the jury never addressed whether Mata–Medina committed a criminally negligent act by failing to perceive a risk of death. Rather, the jury only addressed whether the degree of risk involved would support recklessness or conduct committed knowingly.

Mata–Medina furnished the jury with an evidentiary basis to conclude that he, unaware of the risk of death from a blow to the neck, failed to perceive the risk of death when he hit Gettler in the neck. Thus, in the context of the evidence presented at trial, it was for a jury to determine the material fact whether Mata–Medina was aware of the risk that a strike to the neck could cause immediate and sudden death. A jury should have had the option to convict Mata–Medina on a charge that was consistent with the evidence and with his defense.

Here, however, the trial court gave to the jury two choices: find some degree of awareness of the risk of Gettler's death from his conduct or acquit him. Given that overwhelming evidence connected Mata–Medina to Gettler's death, despite any reasonable doubts jurors may have had as to his awareness of the risk entailed by his actions, a jury would have convicted him on some charge. *See Keeble v. United States,* 412 U.S. 205, 212–13, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973) (discussing the necessity of a lesser-included offense in light of the likelihood that a jury is likely to resolve doubts in favor of a conviction where its only options are to convict or acquit when the jury possesses knowledge that the defendant committed *some* crime).

In that respect, this case is no different than the numerous other cases in which we found reversible constitutional error for a failure to instruct on a lesser included offense/theory of defense because it is for the jury, under proper circumstances, and not the trial court to weigh and consider the evidence. *Crawford v. People,* 12 Colo. 290, 20 P. 769 (1889); *People v. Nunez,* 841 P.2d 261, 265 (Colo.1992) (reversible error to refuse theory of defense as it is for the jury and not the court to determine the credibility

of the witnesses, the weight of the testimony, and the adequacy of the defendant's theory of the defense); *Read v. People,* 119 Colo. 506, 509, 205 P.2d 233, 235 (1949) ("nothing in our criminal practice is more thoroughly established or definitely settled than the principle that when there is any evidence, however improbable, unreasonable or slight, which tends to reduce the homicide" to a lower grade, a defendant is entitled to an instruction); *Shaw,* 646 P.2d at 379–80 (citing *People v. Watkins,* 196 Colo. 377, 586 P.2d 43 (1978) (second degree murder conviction reversed where court refused to instruct jury on criminally negligent homicide); *People v. Miller,* 187 Colo. 239, 529 P.2d 648 (1974) (first degree murder conviction reversed where court refused to instruct on lesser offenses of voluntary and involuntary manslaughter); *Sanchez v. People,* 172 Colo. 168, 470 P.2d 857 (1970) (second degree murder conviction reversed due to court's failure to instruct on involuntary manslaughter); *Ferrin v. People,* 164 Colo. 130, 433 P.2d 108 (1967) (first degree murder conviction reversed where court refused to instruct on voluntary manslaughter); *Gallegos v. People,* 136 Colo. 321, 316 P.2d 884 (1957) (first degree murder conviction reversed due to court's refusal to instruct on voluntary and involuntary manslaughter); *Read,* 119 Colo. 506, 205 P.2d 233 (second degree murder conviction reversed due to court's refusal to instruct on voluntary and involuntary manslaughter); *Baker v. People,* 114 Colo. 50, 160 P.2d 983 (1945) (second degree murder conviction reversed where court refused to instruct on voluntary and involuntary manslaughter)).

Because the trial court erred when it refused to instruct the jury on a lesser included offense of criminally negligent homicide; because the jury was effectively instructed that to believe Mata–Medina's version of events required his acquittal; because the jury was not given an option to convict him on his theory of defense; and because substantial evidence connected Mata–Medina to Gettler's death, such that a jury would have trouble acquitting him knowing that he was involved somehow in the crime; I would find the error

here to be of the same type that we have so often found reversible.

### C. The Verdict

After twice being deadlocked during deliberations, the jury eventually returned a verdict of second degree murder. Undoubtedly, the verdict, which rejected the intermediate offense of reckless manslaughter, lends some support to the majority's assertion that Mata–Medina suffered no prejudice. But, its conclusion is too facile. The jury here never considered whether Mata–Medina failed to perceive a risk of death from his actions, but nonetheless committed a crime. Thus, the jury was denied an opportunity to convict him according to his theory of defense. In light of the facts of this case, I would find the verdict unreliable and undermined by the court's failure to instruct on the lesser included offense of criminally negligent homicide.

Additionally, the majority's support in case law for the proposition that the rejection of an intermediate offense necessarily rejects all lesser offenses—without a review of the facts—rests on cases that are incomparable to the one before us. Specifically, none of our cases or those of our sister states, addressed the critical distinction in the criminal culpability between criminally negligent homicide, failure to perceive a risk, on the one hand, and on the other, reckless manslaughter and second degree murder, which both require some awareness of a result from an actor's conduct. This distinction is important because the jury never had the opportunity to convict Mata–Medina consistent with his theory of defense that he was unaware of the risk of death. Furthermore, nothing in our precedent addressed the situation where a reviewing court first finds an error in the trial court's refusal to give an instruction on a lower grade offense, but nevertheless finds the error harmless.

**2.** A later Tenth Circuit case, *Mullins v. Evans,* 622 F.2d 504 (10th Cir.1980) labeled Mullins' trial in state court a sham in which the defense made every possible attempt to ensure the jury convicted him of first-degree murder.

**3.** Section 18–3–104(1)(c), C.R.S. (1973), the manslaughter statute which *Mullins* cites stated: "With *intent* to cause the death of a person other

For example, in *People v. Mullins,* 188 Colo. 23, 532 P.2d 733 (1975), this court announced that there could be no inference of prejudice for a court's failure to instruct on manslaughter when a jury instruction for second degree murder was given, but the jury opted to convict Mullins of first degree murder. However, this court reviewed the evidence in detail before finding no inference of prejudice.

> The evidence as presented here fails to reveal anything which would support or justify a manslaughter instruction to the jury.... The uncontroverted evidence here is absolutely devoid of any provoking act on the part of the victim, or that any provocation occurred which would excite an irresistible passion in a reasonable person. Rather, the evidence shows that the victim, who was in bed asleep, was awakened by his wife, had just got out of bed, and while standing next to the bed was shot down by the defendant.... This is murder and nothing else.

188 Colo. 23, 25–26, 532 P.2d 733, 734–35.[2] Moreover, *Mullins* only addressed the failure to give an instruction on manslaughter, which like second degree murder, concerns an awareness[3] of risk for a criminal act—not the failure to perceive a risk as was the defense and central issue in this case.

Likewise, in *People v. Bartowsheski,* 661 P.2d 235 (Colo.1983) we found no inference of prejudice when there was no rational basis in the evidence to support the submission of the charge of reckless manslaughter. In *Bartowsheski,* the defendant stabbed an eight-year old girl, cutting her carotid artery and jugular vein in the neck, another stab penetrating the brain, and two deep stabs puncturing the victim's lungs. *Id.* at 239–40. The injury was inflicted through a repeated sawing motion. *Id.* at 240. This court found untenable defendant's claim of error in the

than himself, under circumstances where the act causing the death was performed, not after deliberation, upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person killing sufficiently to excite an irresistible passion in a reasonable person ...." (emphasis added).

trial court's refusal to instruct on the crime of reckless manslaughter because "[t]o submit reckless manslaughter to the jury would mean that, under this state of the record, the jury could rationally find that the defendant did not inflict these wounds with a practical certainty that death would occur ... but instead did so with a mere conscious disregard of a fatal risk. The record, in other words, would have to provide rational support [for that finding].... There is a total absence, however, of any evidence to support such a finding." *Id.* at 243. Because of the lack of evidence in the record for an instruction, it would be inconsistent to find an inference of prejudice for a failure to instruct when the jury rejected second degree murder in favor of conviction of first degree murder. In sum, in both *Mullins* and *Bartowsheski,* before concluding that the defendant suffered no prejudice when the jury had convicted the defendant of the highest grade offense, and rejected the intermediate one, the court reviewed the record. Upon a review of the record, this court first concluded that the evidence did not support the giving of an instruction on a lesser included offense. To find prejudice upon a determination that no evidence supported an instruction would be incongruous. Furthermore, neither case presented the same issue before us here that the defendant failed to perceive the risk of harm as Mata–Medina alleges.

The majority relies upon *People v. Favors,* 192 Colo. 136, 556 P.2d 72 (1976) for the same proposition that the rejection of an intermediate offense raises no inference of prejudice for a failure to instruct on a lesser included offense. I would also find *Favors* inapplicable, because again, the court did not first find that it was an error to refuse the instruction. Rather, *Favors* stated that the instruction tendered by the defense was an erroneous statement of law, and as such it was not error to refuse an instruction for criminally negligent homicide[4] to the jury. That this court goes on to say that the

defendant suffered no prejudice for failure to give an erroneous instruction, then, is of little significance. Nor did *Favors* address the issue here—failure to perceive a risk. In summary, my review of our precedent indicates that it does not encompass nor predict a categorical rule that lacks any factual analysis.

The majority also relies on the court of appeals case, *People v. Gordon,* 765 P.2d 633 (Colo.App.1988). I agree with the majority's assessment of the dicta in *Gordon* that in many instances there is no inference of prejudice for a failure to instruct on a lesser included offense where a jury convicts a defendant "of an offense higher than an included offense on which there was an instruction, and there is a still lesser included offense on which there was no instruction." *Id.* at 635.

Distilled to its essence, the court of appeals expressed that when the offered defense is sufficiently addressed by other instructions tendered to the jury and rejected by them, there is no reversible error. While that proposition is generally true, it does not apply here because of the significant difference in the mens rea for criminal negligence and recklessness that is the basis of the defense in this case.

The cases from our sister states also address the same general proposition that is not applicable to the factual situation in this case. Some are inapplicable because like *Mullins* and *Bartowsheski,* the reviewing court found no prejudice in a failure to give an instruction since no evidence supported the giving of the instruction in the first instance. Others are inapplicable because the jury's consideration of the defense theory upon which the defendant requested an instruction was not precluded by the given instructions, as explained in *Gordon.* The applicable cases endorse my view that a review of the record is necessary to test the hypothesis that a defendant suffered no prejudice.[5]

---

4. When *Favors* was decided, the offense of criminally negligent homicide could be committed either by conduct amounting to criminal negligence or by intentionally causing the death of a person in a good faith but unreasonable belief that justification existed under section 18–3–

105(1), C.R.S. (1973.). Defendant Favors sought an instruction on an intentional act, and this is not the same instruction that Mata–Medina requested.

5. *People v. Cornell,* 466 Mich. 335, 646 N.W.2d 127, 144 n. 19 (2002) calls for a "consideration

In some of the cases from other jurisdictions the reviewing courts found that a defendant suffered no prejudice for failure to give an instruction that had no evidentiary basis. For example, in *State v. Jones*, 979 S.W.2d 171, 176 (Mo.1998), Defendant Jones killed his grandmother by first hitting her with a butcher block and then repeatedly stabbing her. After killing her, he robbed her and used the proceeds to buy crack cocaine. *Id.* at 177. At trial, the jury convicted the defendant of first degree murder and rejected second degree murder. *Id.* at 185. The defendant claimed error for the failure to instruct the jury on voluntary manslaughter. *Id.* To be sure, upon review, the Missouri Supreme Court stated that "no reasonable basis exists to suggest that the jury would have reduced the conviction had they been presented with" an instruction on an even lesser offense. *Id.* However, that statement is followed by another that, "the review of the record does not support any instructional inference to sudden passion arising from adequate cause." *Id.* Certainly then, no prejudice can be inferred.

Similarly, in *Commonwealth v. Counterman*, 553 Pa. 370, 719 A.2d 284 (1998) a jury found the defendant had set fire to his own home, killing his three children, and convicted him of first degree murder. Counterman alleged that the trial court erred in refusing an instruction on reckless manslaughter. *Id.* at 303. However, the court found that since

the jury had rejected the intermediate defense of second degree murder, there could be no inference of prejudice for a refusal of an instruction on reckless manslaughter. *Id.* at 304. The Pennsylvania Supreme Court stated "[t]here is not the slightest reason to believe that the jury would have returned a verdict of voluntary manslaughter out of sympathy or in recognition of the factors that they may have deemed mitigating where those factors were not sufficiently compelling to cause them to elect a lesser alternative that was offered." *Id.* This proposition cannot be disputed when there is no error in refusing an instruction. Under a separate review of the same instructional error, the Pennsylvania Supreme Court stated that there was no evidence in support of a sudden or intense passion or serious provocation by the victims of the offense. *Id.* at 303–04.

In neither of these cases did the reviewing court find an error to instruct on a lesser included offense; therefore that the reviewing court also found no prejudice is of little import.[6]

*State v. Hall*, 982 S.W.2d 675, 679, 682 (Mo.1998), supports the principle involved in the dicta in *Gordon*, that where the rejected *instruction does not preclude a jury's consideration of the defendant's theory of the case*—upon which a jury could find the defendant not guilty of the greater offenses for

of the 'entire cause' " to determine whether an error is reversible, citing *People v. Beach*, 429 Mich. 450, 418 N.W.2d 861 (1988). Thus, although it may be harmless error when a jury rejects an intermediate offense and convicts of a greater one, that conclusion should only be reached after a review of the record. Indeed, Michigan supports my view of harmless error analysis. In *People v. Beach*, 429 Mich. 450, 418 N.W.2d 861, 879 (1988), the court explains that generally, the rejection of an intermediate offense suggests that the jury's verdict is sound, but that is not a forgone conclusion. Rather, for this rule to apply, "the intermediate charge rejected by the jury would necessarily have to indicate a lack of likelihood that the jury would have adopted the lesser requested charge." *Id.*

The majority also cites *State v. Allen*, 69 S.W.3d 181, 191 (Tenn.2002) for the same proposition. However, that case states that under a harmless error inquiry "a reviewing court should conduct a thorough examination of the record, including

the evidence presented at trial, the defendant's theory of defense, and the verdict returned by the jury. A reviewing court *may* find the error harmless because the jury, by finding the defendant guilty of the highest offense, to the exclusion of immediately lesser offense, necessarily rejected all other lesser-included offenses." *Id.* at 191 (emphasis added). Thus, Tennessee does not support a categorical harmless error rule, but supports thorough review. Such review is especially appropriate in this factually close case.

**6.** The majority also relies on *State v. Daniels*, 40 P.3d 611, 620–21 (Utah 2002). But, I would find that case factually distinguishable. The defendant participated in the murder of a fellow inmate in prison where he held the legs of the victim, while another repeatedly stabbed the victim with a shank, and the defendant bragged about the sound and feel of the shank entering and exiting the victim's body. *Id.* at 615. I do not believe that this evidence supports the giving of an instruction on manslaughter.

which instructions are given—a defendant suffers no prejudice.

Without any review of the facts, the Missouri Supreme Court found in *Hall*, that the defendant suffered no prejudice for a failure to a give a second degree felony murder instruction in a case where the defendant robbed the victim by "put[ting the gun] straight—close to his head." 982 S.W.2d at 679, 682. At trial, the jury convicted defendant of first degree murder and rejected the charge of second degree murder. Under Missouri law, a person commits first degree murder if he "knowingly causes the death of another person after deliberation upon the matter." Mo. Ann. Stat. § 565.020 (2002). A person commits second degree murder if he "knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." Mo. Ann. Stat § 565.021. Second degree felony murder, on the other hand, simply requires that a victim is killed during the perpetration of a felony, without any jury determination of culpability. *Id.* As such, felony murder is not a lesser included offense in that a jury could convict of both murder and felony murder; a conviction of felony murder may be consistent with an additional conviction upon either first or second degree murder. In that sense, *Hall* is not applicable because the failure to give a felony murder instruction did not deprive Hall of any defense to first or second degree murder. Thus, *Hall* does not support the use of categorical rule that denies a defendant his theory of defense.

I cannot agree that it is always harmless error to fail to give an instruction on criminally negligent homicide whenever a jury rejects reckless manslaughter without regard to the nature of the defense in the case. The question a reviewing court must address is whether it was necessary for the jury to be given the option to consider whether a defendant did not perceive a risk of harm when a jury has before it only the greater offenses of reckless manslaughter and second degree murder. Both of the greater offenses require an awareness of the risk of harm, and allow no room to convict a defendant for failure to perceive a risk of harm.

## III. The Record Indicates the Error is Reversible

I do not assert that it is always reversible error when a court fails to give an instruction on a lower grade lesser included offense. Rather, I contend that there is no support for the application of a categorical rule to the circumstances of this case. Here, the testimony adduced at trial suggested that Mata–Medina was criminally negligent. I find untenable the proposition that reversible error was not committed in this case on the mere basis that the jury did not, out of sympathy, convict Mata–Medina of the intermediate offense of reckless manslaughter. The jury had only two options: to convict on the basis that Mata–Medina had some awareness that his actions could result in death or to acquit. That awareness of risk is precisely the factor that separates reckless manslaughter and second degree murder, on one hand, and criminally negligent homicide, on the other. Whether Mata–Medina was consciously aware of the risk of his actions was never presented to the jury. Because the trial court decided this issue before the jury could consider it, the trial court foreclosed the jury's option of convicting him in accordance with the evidence and with the theory of his defense.

"We [cannot] say that ... the jury would have found differently had they been properly instructed. What we do say is that there was not an entire absence of evidence tending to establish the crime of [criminally negligent homicide], and that defendant was entitled to an instruction .... It is obviously impossible for us to hold that the error thus committed was without prejudice." *Crawford v. People*, 12 Colo. 290, 294, 20 P. 769, 771 (1889). We have adhered to this principle for over a century. Given a choice, on the facts of this case, a jury may well have convicted Mata–Medina of criminally negligent homicide while acquitting him of the two greater offenses. It is for the jury to decide whether to accept Mata–Medina's version of the events. Further, a review of whether the error is reversible must be based on the entirety of the record.

## IV. Conclusion

I do not agree with the majority's adoption of harmless error review including the categorical rule that it applies to this case. Moreover, a thorough overview of the record supports my finding that the prosecution has not proven beyond a reasonable doubt that in the absence of the error, the jury would have nevertheless convicted Mata-Medina of murder in the second degree. Additionally, a thorough overview of the record supports my finding that a reasonable probability exists that the trial court's error affected the verdict and Mata-Medina's substantial rights to have a jury determination on the central issue—his failure to perceive the risk of harm. I would reverse the judgment of the court of appeals. Accordingly, I respectfully dissent.

I am authorized to say that Justice BENDER joins in this dissent.