# Judicial Merit Selection Commission

Sen. Luke A. Rankin, Chairman
Sen. Ronnie A. Sabb
Sen. Scott Talley
Rep. J. Todd Rutherford
Rep. Jeffrey E. "Jeff" Johnson
Rep. Micajah P. "Micah" Caskey, IV
Hope Blackley
Lucy Grey McIver
Andrew N. Safran
J.P. "Pete" Strom Jr.

Erin B. Crawford, Chief Counsel
Emma Dean, Counsel



Post Office Box 142
Columbia, South Carolina 29202
(803) 212-6623

## M E D I A   R E L E A S E

June 24, 2022

The Judicial Merit Selection Commission is accepting applications for the judicial offices listed below:

A vacancy will exist in the office currently held by the Honorable Kaye G. Hearn, Justice of the Supreme Court, Seat 4, upon her retirement on or before December 31, 2022. The successor will serve the remainder of the unexpired term of that office, which expires July 31, 2032.

The term of office currently held by the Honorable Blake A. Hewitt, Judge of the Court of Appeals, Seat 1, will expire June 30, 2023.

A vacancy will exist in the office formerly held by the Honorable H. Bruce Williams, Judge of the Court of Appeals, Seat 2, upon his election to the Court of Appeals, Seat 5, Chief Judge. The successor will serve a new term of that office, which expires June 30, 2029.

A vacancy will exist in the office currently held by the Honorable Steven H. John, Judge of the Circuit Court, Fifteenth Judicial Circuit, Seat 1. The successor will serve the remainder of the unexpired term of that office, which expires June 30, 2028.

A vacancy will exist in the office currently held by the Honorable Clifton Newman, Judge of the Circuit Court, At-Large, Seat 3, upon his retirement on or before December 31, 2023. The successor will serve the remainder of the unexpired term of that office, which expires June 30, 2027.

A vacancy exists in the office formerly held by the Honorable Nancy Chapman McLin, Judge of the Family Court, First Judicial Circuit, Seat 3. The successor will serve the remainder of the unexpired term of that office, which expires June 30, 2028.

A vacancy will exist in the office currently held by the Honorable Wayne M. Creech, Judge of the Family Court, Ninth Judicial Circuit, Seat 4, upon his retirement on or before December 31, 2023. The successor will serve the remainder of the unexpired term of that office, which expires June 30, 2025.

A vacancy exists in the office formerly held by the Honorable Jack A. Landis, Judge of the Family Court, Ninth Judicial Circuit, Seat 6, upon his retirement on or before June 30, 2022. The successor will serve the remainder of the unexpired term of that office, which expires June 30, 2028.

A vacancy exists in the office formerly held by the late Honorable Edgar H. Long, Judge of the Family Court, Tenth Judicial Circuit, Seat 1. The successor will serve the remainder of the unexpired term, which expires June 30, 2025.

A vacancy will exist in the office currently held by the Honorable Timothy H. Pogue, Judge of the Family Court, Twelfth Judicial Circuit, Seat 1, upon his retirement on or before December 31, 2023. The successor will serve the remainder of the unexpired term, which expires June 30, 2025.

The term of office currently held by the Honorable Thomas Tredway Hodges, Judge of the Family Court, At-Large, Seat 7, will expire June 30, 2023.

The term of office currently held by the Honorable Rosalyn W. Frierson, Judge of the Family Court, At-Large, Seat 8, will expire June 30, 2023.

A vacancy will exist in the office currently held by the Honorable Shirley C. Robinson, Judge of the Administrative Law Court, Seat 5, upon her retirement on or before June 30, 2023. The successor will serve a new term of that office, which will expire June 30, 2028.

A vacancy will exist in the newly created seat for Master-in-Equity of Pickens County, Thirteenth Circuit. The term will be from July 1, 2023, until June 30, 2029.

In order to receive application materials, a prospective candidate, including judges seeking re-election, must notify the Commission in writing of his or her intent to apply. Note that an email will suffice for written notification. Correspondence and questions should be directed to the Judicial Merit Selection Commission as follows:

Erin B. Crawford, Chief Counsel
Post Office Box 142
Columbia, South Carolina 29202
ErinCrawford@scsenate.gov or (803) 212-6689

# The Supreme Court of South Carolina

RE:  In the Matter of Edgefield County Magistrate James A. McLaurin, Jr.

---

## O R D E R

---

Edgefield County Magistrate James A. McLaurin, Jr. has repeatedly failed to conduct bond hearings in a timely manner in violation of S.C. Code Ann. § 22-5-510(B) (2007). Magistrate McLaurin has previously been directed that such neglect of duty is an unacceptable affront to the fair administration of justice and the courts. Subsequent to Judge McLaurin's last warning in September of 2021, I issued an order on November 8, 2021, requiring full-time and part-time magistrates perform their judicial duties in conformance with their compensation and assignments.

After receiving recent allegations of neglect of duty, I met with Magistrate McLaurin and granted him the opportunity to respond to the allegations. Magistrate McLaurin did not contest the allegations but instead offered information about a plan of improvement that was developed after his last warning. This plan has not been effective. Having failed to provide an adequate response, and due to the repetitive nature of the misconduct, I find it necessary and in the best interest of the public to take immediate action. Therefore, pursuant to Article V, Section 4 of the South Carolina Constitution,

**IT IS ORDERED** that Edgefield County Magistrate McLaurin is suspended from his magisterial duties for a definite period of ninety days, without compensation from Edgefield County, and such suspension shall begin immediately.

Given the significance of this matter, a copy of this order will be distributed to all summary court judges. These judges are directed to carefully evaluate their own procedures and be physically present during working hours. Chief Judges for Administrative Purposes are reminded of their responsibility to monitor all summary court judges within the county to ensure compliance with the provisions of the Order of the Chief Justice dated September 19, 2007, outlining certain bond procedures.

s/Donald W. Beatty
Donald W. Beatty
Chief Justice of South Carolina


Columbia, South Carolina
July 11, 2022



# OPINIONS

OF

# THE SUPREME COURT

AND

# COURT OF APPEALS

OF

# SOUTH CAROLINA

**ADVANCE SHEET NO. 25**
**July 13, 2022**
**Patricia A. Howard, Clerk**
**Columbia, South Carolina**
**www.sccourts.org**

# CONTENTS

## THE SUPREME COURT OF SOUTH CAROLINA

### PUBLISHED OPINIONS AND ORDERS

Order – In the Matter of David Charles Johnston 15

Order – In the Matter of Richard W. Lingenfelter, Jr. 16

Order – In the Matter of Richard Alexander Murdaugh 18

### UNPUBLISHED OPINIONS

None

### PETITIONS - UNITED STATES SUPREME COURT

28081 – Steven Louis Barnes v. State Pending

### EXTENSION TO FILE PETITION - UNITED STATES SUPREME COURT

None

### PETITIONS FOR REHEARING

28095 – The Protestant Episcopal Church v. The Episcopal Church Pending

28099 – Jacquelin Bennett v. Estate of James King Pending

# THE SOUTH CAROLINA COURT OF APPEALS

## PUBLISHED OPINIONS

5922 – The State v. Olandio R. Workman                    21

## UNPUBLISHED OPINIONS

2022-UP-292 – State v. Danny J. Plumley

2022-UP-293 – State v. Malette D. Kimbrough

2022-UP-294 – Bernard Bagley #175851 v. SCPPPS (2)

2022-UP-295 – James B. Schwiers v. Gene B. Schwiers

2022-UP-296 – S.C. Department of Revenue v. Study Hall, LLC

2022-UP-297 – Jada Garris v. Lexington School District One

2022-UP-298 – State v. Gregory Sanders

## PETITIONS FOR REHEARING

5906 – Isaac D. Brailey v. Michelin, N.A.                    Pending

5912 – State v. Lance Antonio Brewton                    Pending

5915 – State v. Sylvester Ferguson, III                    Pending

5916 – Amanda Huskins v. Mungo Homes, LLC                    Pending

2022-UP-002 – Timothy Causey v. Horry County                    Pending

2022-UP-096 – Samuel Paulino v. Diversified Coatings, Inc.                    Pending

2022-UP-114 – State v. Mutekis Jamar Williams                    Pending

2022-UP-169 – Richard Ladson v. THI of South Carolina at Charleston     Pending

2022-UP-186 – William B. Justice v. State     Pending

2022-UP-203 – Estate of Patricia Royston v. Hunt Valley Holdings     Pending

2022-UP-205 – Katkams Ventures, LLC v. No Limit, LLC     Pending

2022-UP-209 – State v. Dustin L. Hooper     Pending

2022-UP-229 – Adele Pope v. Estate of James Brown (3)     Pending

2022-UP-230 – James Primus #252315 v. SCDC (2)     Pending

2022-UP-236 – David J. Mattox v. Lisa Jo Bare Mattox     Pending

2022-UP-240 – Debra Holliday v. Bobby Holliday     Pending

2022-UP-243 – In the Matter of Almeter B. Robinson (2)     Pending

2022-UP-245 – State v. John Steen d/b/a John Steen Bail Bonding     Pending

2022-UP-249 – Thomas Thompson #80681 v. SCDC     Pending

2022-UP-251 – Lady Beaufort, LLC v. Hird Island Investments     Pending

2022-UP-252 – Lady Beaufort, LLC v. Hird Island Investments (2)     Pending

2022-UP-253 – Mathes Auto Sales v. Dixon Automotive     Pending

2022-UP-255 – Frances K. Chestnut v. Florence Keese     Pending

2022-UP-256 – Sterling Hills v. Elliot Hayes     Pending

2022-UP-264 – M B Hutson v. A. Paul Weissenstein     Pending

2022-UP-265 – Rebecca Robbins v. Town of Turbeville     Pending

2022-UP-266 – Rufus Griffin v. Thomas Mosley                          Pending

2022-UP-274 – SCDSS v. Dominique G. Burns                          Pending


**PETITIONS – SUPREME COURT OF SOUTH CAROLINA**

5738 – The Kitchen Planners v. Samuel E. Friedman                          Pending

5769 – Fairfield Waverly v. Dorchester County Assessor                          Pending

5776 – State v. James Heyward                          Pending

5794 – Sea Island Food v. Yaschik Development (2)                          Pending

5816 – State v. John E. Perry, Jr.                          Pending

5818 – Opternative v. SC Board of Medical Examiners                          Pending

5821 – The Estate of Jane Doe 202 v. City of North Charleston                          Pending

5822 – Vickie Rummage v. BGF Industries                          Pending

5824 – State v. Robert Lee Miller, III                          Pending

5826 – Charleston Development v. Younesse Alami                          Pending

5827 – Francisco Ramirez v. May River Roofing, Inc.                          Pending

5829 – Thomas Torrence #094651 v. SCDC                          Pending

5832 – State v. Adam Rowell                          Pending

5834 – Vanessa Williams v. Bradford Jeffcoat                          Pending

5835 – State v. James Caleb Williams                          Pending

5838 – Elizabeth Hope Rainey v. SCDSS                          Pending

| | |
|---|---|
| 5839 – In the Matter of Thomas Griffin | Pending |
| 5840 – Daniel Lee Davis v. ISCO Industries, Inc. | Pending |
| 5841 – State v. Richard Passio, Jr. | Pending |
| 5843 – Quincy Allen #6019 v. SCDC | Pending |
| 5844 – Deutsche Bank v. Patricia Owens | Pending |
| 5845 – Daniel O'Shields v. Columbia Automotive | Pending |
| 5846 – State v. Demontay M. Payne | Pending |
| 5849 – SC Property and Casualty Guaranty Fund v. Second Injury Fund | Pending |
| 5850 – State v. Charles Dent | Pending |
| 5851 – State v. Robert X. Geter | Pending |
| 5853 – State v. Shelby Harper Taylor | Pending |
| 5854 – Jeffrey Cruce v. Berkeley Cty. School District | Pending |
| 5855 – SC Department of Consumer Affairs v. Cash Central | Pending |
| 5856 – Town of Sullivan's Island v. Michael Murray | Pending |
| 5858 – Beverly Jolly v. General Electric Company | Pending |
| 5859 – Mary P. Smith v. Angus M. Lawton | Pending |
| 5860 – Kelaher, Connell & Conner, PC v. SCWCC | Pending |
| 5861 – State v. Randy Collins | Pending |
| 5863 – State v. Travis L. Lawrence | Pending |
| 5864 – Treva Flowers v. Bang N. Giep, M.D. | Pending |

| | |
|---|---|
| 5865 – S.C. Public Interest Foundation v. Richland County | Pending |
| 5866 – Stephanie Underwood v. SSC Seneca Operating Co. | Pending |
| 5867 – Victor M. Weldon v. State | Pending |
| 5868 – State v. Tommy Lee Benton | Pending |
| 5870 – Modesta Brinkman v. Weston & Sampson Engineers, Inc. | Pending |
| 5871 – Encore Technology Group, LLC v. Keone Trask and Clear Touch | Pending |
| 5874 – Elizabeth Campione v. Willie Best | Pending |
| 5875 – State v. Victoria L. Sanchez | Pending |
| 5877 – Travis Hines v. State | Pending |
| 5878 – State v. Gregg Pickrell | Pending |
| 5880 – Stephen Wilkinson v. Redd Green Investments | Pending |
| 5884 – Frank Rish, Sr. v. Kathy Rish | Pending |
| 5885 – State v. Montrell Lamont Campbell | Pending |
| 5888 – Covil Corp. v. Pennsylvania National Mut. Ins. Co. | Pending |
| 5891 – Dale Brooks v. Benore Logistics System, Inc. | Pending |
| 5892 – State v. Thomas Acker | Pending |
| 5898 – Josie Bostick v. Earl Bostick, Sr. | Pending |
| 5900 – Donald Simmons v. Benson Hyundai, LLC | Pending |
| 5903 – State v. Phillip W. Lowery | Pending |

5904 – State v. Eric E. English                                      Pending

5905 – State v. Richard K. Galloway                                  Pending

5908 – State v. Gabrielle Olivia Lashane Davis Kocsis                Pending

2021-UP-121 – State v. George Cleveland, III                         Pending

2021-UP-141 – Evelyn Hemphill v. Kenneth Hemphill                    Pending

2021-UP-147 – Gavin V. Jones v. State                                Pending

2021-UP-161 –Wells Fargo Bank, N.A. v. Albert Sanders (2)            Pending

2021-UP-167 – Captain's Harbour v. Jerald Jones (2)                  Pending

2021-UP-171 – Anderson Brothers Bank v. Dazarhea Monique Parson(3)   Pending

2021-UP-196 – State v. General T. Little                             Pending

2021-UP-230 – John Tomsic v. Angel Tomsic                            Pending

2021-UP-242 – G. Allen Rutter v. City of Columbia                    Pending

2021-UP-247 – Michael A. Rogers v. State                             Pending

2021-UP-252 – Betty Jean Perkins v. SCDOT                            Pending

2021-UP-259 – State v. James Kester                                  Pending

2021-UP-272 – Angela Bain v. Denise Lawson                           Pending

2021-UP-273 – SCDHEC v. Davenport                                    Pending

2021-UP-275 – State v. Marion C. Wilkes                              Pending

2021-UP-277 – State v. Dana L. Morton                                Pending

2021-UP-278 – State v. Jason Franklin Carver                         Pending

2021-UP-279 – State v. Therron R. Richardson                                          Pending

2021-UP-280 – Carpenter Braselton, LLC v. Ashley Roberts                    Pending

2021-UP-281 – In the Matter of the Estate of Harriet Kathleen
                      Henry Tims                                                                     Pending

2021-UP-283 – State v. Jane Katherine Hughes                                       Pending

2021-UP-288 – Gabriel Barnhill v. J. Floyd Swilley                                Pending

2021-UP-289 – Hicks Unlimited v. UniFirst Corporation                         Pending

2021-UP-293 – Elizabeth Holland v. Richard Holland                             Pending

2021-UP-298 – State v. Jahru Harold Smith                                            Pending

2021-UP-302 – State v. Brandon J. Lee                                                  Pending

2021-UP-306 – Kenneth L. Barr v. Darlington Cty. School Dt.                 Pending

2021-UP-312 – Dorchester Cty. Taxpayers Assoc. v. Dorchester Cty.     Pending

2021-UP-330 – State v. Carmie J. Nelson                                              Pending

2021-UP-336 – Bobby Foster v. Julian Neil Armstrong (2)                     Pending

2021-UP-341 – Phillip Francis Luke Hughes v. Bank of America           Pending

2021-UP-351 – State v. Stacardo Grissett                                             Pending

2021-UP-354 – Phillip Francis Luke Hughes v. Bank of America (2)       Pending

2021-UP-360 – Dewberry v. City of Charleston                                     Pending

2021-UP-367 – Glenda Couram v. Sherwood Tidwell                           Pending

2021-UP-368 – Andrew Waldo v. Michael Cousins                              Pending

2021-UP-370 – State v. Jody R. Thompson                                    Pending

2021-UP-372 – Allen Stone v. State                                          Pending

2021-UP-373 – Glenda Couram v. Nationwide Mutual                            Pending

2021-UP-384 – State v. Roger D. Grate                                       Pending

2021-UP-385 – David Martin v. Roxanne Allen                                 Pending

2021-UP-395 – State v. Byron L. Rivers                                      Pending

2021-UP-396 – State v. Matthew J. Bryant                                    Pending

2021-UP-399 – Henry Still, V v. Barbara Vaughn                              Pending

2021-UP-400 – Rita Brooks v. Velocity Powersports, LLC                      Pending

2021-UP-405 – Christopher E. Russell v. State                              Pending

2021-UP-408 – State v. Allen A. Fields                                      Pending

2021-UP-418 – Jami Powell (Encore) v. Clear Touch Interactive               Pending

2021-UP-422 – Timothy Howe v. Air & Liquid Systems
              (Cleaver-Brooks)                                              Pending

2021-UP-429 – State v. Jeffery J. Williams                                  Pending

2021-UP-436 – Winston Shell v. Nathaniel Shell                             Pending

2021-UP-437 – State v. Malik J. Singleton                                   Pending

2021-UP-447 – Jakarta Young #276572 v. SCDC                                Pending

2021-UP-454 – K.A. Diehl and Assoc. Inc. v. James Perkins                  Pending

2022-UP-003 – Kevin Granatino v. Calvin Williams                           Pending

2022-UP-021 – State v. Justin Bradley Cameron     Pending

2022-UP-022 – H. Hughes Andrews v. Quentin S. Broom, Jr.     Pending

2022-UP-023 – Desa Ballard v. Redding Jones, PLLC     Pending

2022-UP-025 – Nathenia Rossington v. Julio Rossington     Pending

2022-UP-028 – Demetrius Mack v. Leon Lott (2)     Pending

2022-UP-033 – E.G. and J.J. v. SCDSS     Pending

2022-UP-036 – John Burgess v. Katherine Hunter     Pending

2022-UP-051 – Ronald I. Paul v. SCDOT (2)     Pending

2022-UP-059 – James Primus #252315 v. SCDC     Pending

2022-UP-063 – Rebecca Rowe v. Family Health Centers, Inc.     Pending

2022-UP-075 – James A. Johnson v. State     Pending

2022-UP-081 – Gena Davis v. SCDC     Pending

2022-UP-085 – Richard Ciampanella v. City of Myrtle Beach     Pending

2022-UP-089 – Elizabeth Lofton v. Berkeley Electric Coop. Inc.     Pending

2022-UP-097 – State v. Brandon K. Moore     Pending

2022-UP-115 – Morgan Conley v. April Morganson     Pending

2022-UP-118 – State v. Donald R. Richburg     Pending

2022-UP-119 – Merilee Landano v. Norman Landano     Pending

2022-UP-146 – M & T Bank v. Tyrone Davis     Pending

2022-UP-163 – Debi Brookshire v. Community First Bank     Pending

2022-UP-170 – Tony Young v. Greenwood Cty. Sheriff's Office            Pending

2022-UP-175 – Brown Contractors, LLC v. Andrew McMarlin            Pending

2022-UP-180 – Berkley T. Feagin v. Cambria C. Feagin            Pending

2022-UP-183 – Raymond Wedlake v. Scott Bashor            Pending

2022-UP-184 – Raymond Wedlake v. Woodington Homeowners Assoc.            Pending

2022-UP-192 – Nivens v. JB&E Heating & Cooling, Inc.            Pending

# The Supreme Court of South Carolina

In the Matter of David Charles Johnston, Respondent.

Appellate Case No. 2022-000695

---

### ORDER

---

The Office of Disciplinary Counsel asks this Court to place respondent on interim suspension pursuant to Rule 17(a) of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR).  Respondent consents to the issuance of an order of interim suspension in this matter.

IT IS ORDERED that respondent's license to practice law in this state is suspended until further order of this Court.

s\ Donald W. Beatty                              C.J.
FOR THE COURT

Columbia, South Carolina
May 24, 2022

15

# The Supreme Court of South Carolina

In the Matter of Richard W. Lingenfelter, Jr.,
Respondent.

Appellate Case Nos. 2022-000908 and 2022-000909

---

## ORDER

---

The Office of Disciplinary Counsel asks this Court to place respondent on interim suspension pursuant to Rule 17(c) of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). The petition also seeks appointment of the Receiver to protect the interests of Respondent's clients pursuant to Rule 31, RLDE, Rule 413, SCACR.

IT IS ORDERED that Respondent's license to practice law in this state is suspended until further order of this Court.

IT IS FURTHER ORDERED that Peyre T. Lumpkin, Esquire, is hereby appointed to assume responsibility for Respondent's client files, trust account(s), escrow account(s), operating account(s), and any other law office accounts Respondent may maintain. Mr. Lumpkin shall take action as required by Rule 31, RLDE, Rule 413, SCACR, to protect the interests of Respondent's clients. Mr. Lumpkin may make disbursements from Respondent's trust account(s), escrow account(s), operating account(s), and any other law office accounts Respondent may maintain that are necessary to effectuate this appointment.

This Order, when served on any bank or other financial institution maintaining trust, escrow and/or operating account(s) of Respondent, shall serve as an injunction to prevent Respondent from making withdrawals from the account(s) and shall further serve as notice to the bank or other financial institution that Peyre T. Lumpkin, Esquire, has been duly appointed by this Court.

Finally, this Order, when served on any office of the United States Postal Service, shall serve as notice that Peyre T. Lumpkin, Esquire, has been duly appointed by this Court and has the authority to receive Respondent's mail and the authority to direct that Respondent's mail be delivered to Mr. Lumpkin's office.

Mr. Lumpkin's appointment shall be for a period of no longer than nine months unless an extension of the period of appointment is requested.

s\ Donald W. Beatty                              C.J.
FOR THE COURT

Columbia, South Carolina
July 6, 2022

17

# The Supreme Court of South Carolina

In the Matter of Richard Alexander Murdaugh,
Respondent.

Appellate Case No. 2022-000812

---

## ORDER

---

We suspended Respondent Richard Alexander Murdaugh from the practice of law on September 8, 2021. *In re Murdaugh*, 434 S.C. 233, 863 S.E.2d 335 (2021). In the intervening months, Respondent has been indicted on more than eighty criminal charges arising from various ongoing investigations. Additionally, Respondent has admitted in various court proceedings and filings that he engaged in financial misconduct involving theft of money from his former law firm; that he solicited his own murder to defraud his life insurance carrier; and that he is liable for the theft of $4,305,000 in settlement funds.[1] Based on these admissions, we issued an order directing Respondent to personally appear before this Court on June 22, 2022, to present legal argument on the question of whether he should be disbarred from the practice of law. We subsequently canceled that hearing after Respondent filed an affidavit waiving all rights to a hearing and stating he did not contest the Court's "authority and decision" to disbar him from the practice of law. In doing so, we noted a formal decision as to disbarment would follow.

Disbarment is among the most serious sanctions this Court can impose for unethical conduct committed by members of the legal profession. The purpose of disbarring an attorney "is to remove from the profession a person whose misconduct has proved him unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney, and thus to protect the public and those charged with the administration of justice." *In re Kennedy*, 254 S.C. 463, 465, 176 S.E.2d 125, 126 (1970).

---

[1] As outlined in our June 16, 2022 order, the public record contains Respondent's admissions of unethical conduct in the context of his myriad criminal charges.

Respondent concedes that disbarment is warranted in light of his admitted professional misconduct. However, our decision today turns not on Respondent's concession, but rather derives from our constitutional authority and duty to protect the public from attorneys who are not fit to practice law. *See In re Barker*, 352 S.C. 71, 74, 572 S.E.2d 460, 462 (2002) ("The authority to discipline attorneys and the manner in which discipline is given rests entirely with this Court."). Indeed, we take this step today based on our ability to conclude from the public record that Respondent's untruthfulness and misconduct resulted in significant harm to clients and demands his removal from the practice of law.

Based on his admitted reprehensible misconduct, we hereby disbar Respondent Richard Alexander Murdaugh from the practice of law in South Carolina. In removing Respondent from the legal profession, we note his misconduct remains under investigation by the Office of Disciplinary Counsel (ODC), and our decision today in no way concludes, limits, restricts, or otherwise impacts the ongoing ODC investigation, which we trust will continue without undue delay. For purposes of transparency and accountability, if additional acts of misconduct by Respondent are discovered in the ODC investigation, we will issue supplemental order(s) detailing any such additional acts of misconduct and imposing additional sanctions where appropriate.[2] *See In re Welch*, 355 S.C. 93, 96, 584 S.E.2d 369, 371 (2003) (imposing additional sanctions four years after indefinitely suspending attorney and explaining that a criminal conviction provides a separate basis for an additional sanction notwithstanding the imposition of a prior sanction involving the same underlying conduct where the criminal proceeding results in information the Court did not consider in imposing the prior sanction).

---

[2] Particularly, we emphasize this Court may issue supplemental orders on issues such as costs and restitution, especially if full restitution is not awarded in other proceedings. *See In re Moody*, 429 S.C. 627, 541 S.E.2d 627 (2020) (finding restitution was an appropriate additional sanction for conduct that occurred prior to the lawyer's disbarment in 2014); *see also* Rule 7(b), RLDE, Rule 413, SCACR (setting forth various sanctions including restitution, disgorgement, reimbursement to Lawyers' Fund for Client Protection, assessment of costs, assessment of a fine, and "any other sanction or requirement as the Supreme Court may determine is appropriate").

s/ Donald W. Beatty                                C.J.

s/ John W. Kittredge                              J.

s/ Kaye G. Hearn                                   J.

s/ John Cannon Few                               J.

s/ George C. James, Jr.                          J.


Columbia, South Carolina
July 12, 2022

20

# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Olandio R. Workman, Appellant.

Appellate Case No. 2018-001769

---

Appeal From Greenville County
Alex Kinlaw, Jr., Circuit Court Judge

---

Opinion No. 5922
Heard October 14, 2021 – Filed July 13, 2022

---

## REVERSED AND REMANDED

---

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, of
Columbia; and Solicitor William Walter Wilkins, III, of
Greenville, for Respondent.

---

**KONDUROS, J.:** Olandio R. Workman appeals his conviction for criminal
domestic violence of a high and aggravated nature (CDVHAN), arguing the trial
court erred in refusing to instruct the jury on the definition of second-degree
criminal domestic violence (CDV) and moderate bodily injury as part of its
first-degree CDV jury instruction. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

A Greenville County grand jury indicted Workman for CDVHAN, kidnapping, and possession of a weapon during the commission of a violent crime for events occurring between August 27 and 29, 2016.

At trial, the victim, Workman's wife, testified Workman returned home on a Saturday evening and accused her of cheating on him. She stated he demanded she turn over her cellphone, "repeatedly" slapped and punched her, and was "constantly smacking [her] in the face, hitting [her] . . . head, [and] punching [her] . . . arms." According to the victim, when she tried to explain, Workman would "smack [her] again, or he'd punch [her] again, or choke [her], and throw [her] to the floor." The victim asserted this continued through the next day and night and Workman did not allow her to sleep or eat. The couple's two young children, who were two and six years old at the time, were in the home during this time. The victim testified she owned two firearms, which were registered in her name and were inside the home during this incident. She stated that during these two days, Workman "was holding [and] carrying [one of the firearms] around the house" to intimidate and threaten her. The victim explained that at one point, Workman struck her hand with a firearm.

The victim testified that before Workman left the home for work on Monday morning, he "was doing something outside." She stated that before he left, he warned her that their home would explode if she opened any of the doors or windows while he was gone. The victim stated she was unable to call for help because Workman had broken her cellphone and she was unable to leave because Workman took the car keys with him. Additionally, the victim provided that when Workman returned home on Monday evening, he continued physically assaulting her and told her to "shower because [she] was disgusting." The victim explained that when she exited the shower, Workman informed her that law enforcement was outside their home. She asserted Workman instructed her to apply makeup to cover her bruises and then lie "down in the bedroom with the kids and not make a sound." The victim stated that while she was in the bedroom, law enforcement repeatedly knocked on the door to the home and called out for her and Workman.

The victim explained she did not answer the door because she believed Workman was still inside their home and she was afraid he would hurt her or their children.

22

Eventually, law enforcement entered the house, discovered the victim and her children inside, and determined Workman had fled the house through the back door or a window. The victim claimed she initially lied to law enforcement about how she got her injuries to avoid "mak[ing] it worse" in case Workman returned home.

After the State rested, Workman waived his right to testify and declined to present any other testimony or evidence. During a discussion as to the charges on which the trial court would instruct the jury, the State agree with Workman's request for a jury instruction on the lesser included offense of first-degree CDV. However, the State initially opposed Workman's request that the trial court define second-degree CDV and moderate bodily injury as part of its first-degree CDV jury instruction. Workman argued both definitions were necessary because the first-degree CDV statute indicates a person is guilty of first-degree CDV if the State proves second-degree CDV along with at least one of several aggravating circumstances. The State did not object to the court "explain[ing] what [second-degree CDV] is," but it opposed charging the jury on the law of second-degree CDV as a lesser included offense. Workman agreed. The trial court ultimately denied Workman's request because the court believed such an instruction would confuse the jury. Workman expressed his concern that the jury would come back with a question "about what is" second-degree CDV. The State responded that it would be "appropriate . . . to maybe at that time explain to them." Workman replied that he did not "have a problem with doing it later." The court then indicated it would read the entire statute on first-degree CDV. The court further stated "it may come back and [the jury has] a question as to what second degree is. And we'll cross that bridge when we get to it." Workman later renewed his objection to the trial court's not defining second-degree CDV when instructing the jury on first-degree CDV.

During closing arguments, the State maintained the evidence demonstrated Workman had beaten the victim, threatened her with a firearm in the presence of their minor children, and prevented the victim and their children from leaving their home for more than twenty-four hours. The State asserted these circumstances—Workman's possession of a gun, the presence of minor children, and Workman's preventing the victim and their children from leaving the house—were sufficient for the jury to find Workman guilty of CDVHAN because they were "circumstances manifesting extreme indifference to the value of human life" under the CDVHAN statute. Workman argued the State failed to prove the victim suffered a great bodily injury because the State did not present any evidence she

23

went to a hospital or otherwise sought medical care. Workman also asserted the victim's decision to remain in the house when Workman left for work showed she did not believe Workman was going to kill her and she was not in fear of great bodily injury or death as required for CDVHAN.

The trial court instructed the jury on (1) the definition of "great bodily injury," (2) the CDVHAN statute, and (3) the entire first-degree CDV statute, without defining second-degree CDV. The court also instructed the jury on the kidnapping and possession of a weapon during the commission of a violent crime statutes. Workman then renewed his request for an instruction on the definition of second-degree CDV and moderate bodily injury, which the trial court denied.

The order of the charges on the jury's verdict form listed CDVHAN first and first-degree CDV second. The trial court instructed the jury that if it found Workman guilty of the first charge, it did not need to make any decision for the second charge.

While deliberating, the jury submitted several questions to the trial court. Throughout the discussion of the trial court's responses to the jury's various questions, Workman continuously renewed his request for jury instructions on the definitions of second-degree CDV and moderate bodily injury. When the jury asked about the difference between CDVHAN and first-degree CDV, the trial court responded by reading both the CDVHAN and first-degree CDV statute and definition of "great bodily injury" to the jury.

During deliberations, the jury requested a hard copy of the relevant statutes. While the court was discussing the request with Workman and the State, the jury submitted additional requests for the trial court to "Explain kidnapping" and to "read what is bodily harm" and "state that fear of what." Over Workman's objection, the trial court responded to the jury's requests for clarification about the law by providing copies of the statutes that defined great bodily harm, CDVHAN, first-degree CDV, and kidnapping.

The jury then asked the court to identify "the difference between peril [and] fear of great bodily injury." After discussing with counsel that the relevant statutes did not define the terms, the trial court told the jurors they should rely on their own judgment and common sense to answer the question.

24

Finally, the jury submitted the following question to the court: "[CDVHAN], if one point is met, can you not look at [first-degree CDV]?" The State indicated it "interpret[ed] that as if [CDVHAN] has been met, can you, also, find him guilty of [first-degree CDV]?" Workman stated, "I'll take the opposite. I would say if one factor is met, can you still consider [first-degree CDV]? If they found one factor there, they could find [it] in both places." The court responded, "So the answer is 'yes' or 'no'?" The State and Workman each responded, "I think the answer is yes." The court stated "the way [it] interpret[ted] this is since you've got [first-degree CDV] as a lesser included -- and that's what they're asking -- can they consider it? I think the answer is yes." After the court informed the jury the answer was "yes" and the jury returned to deliberations, Workman stated that after hearing the question again, he was concerned he may have misunderstood the jury's question. Workman stated he thought the jury meant "can we still look at it?"; the trial court agreed. The trial court did not give any further instructions.

The jury found Workman guilty of CDVHAN, kidnapping, and possession of a weapon during the commission of a violent crime. The trial court sentenced him to concurrent terms of twelve years' imprisonment for the CDVHAN conviction, fifteen years' imprisonment for the kidnapping conviction, and five years' imprisonment for the weapon possession conviction, with credit for 726 days of time-served. This appeal followed.

## STANDARD OF REVIEW

"An appellate court will not reverse a [trial] court's decision regarding a jury instruction unless there is an abuse of discretion." *State v. McGowan*, 430 S.C. 373, 379, 845 S.E.2d 503, 505 (Ct. App. 2020). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *State v. Brooks*, 428 S.C. 618, 625, 837 S.E.2d 236, 239 (Ct. App. 2019) (quoting *State v. Pittman*, 373 S.C. 527, 570, 647 S.E.2d 144, 166-67 (2007)).

## LAW/ANALYSIS

## I.  First-Degree CDV Jury Instruction

Workman argues the trial court erred by refusing to define second-degree CDV and moderate bodily injury as part of its first-degree CDV jury instruction. He

maintains the jury needed the definitions to determine his guilt because both terms are used in the first-degree CDV statute. He also asserts the court needed to provide the requested definitions because the degree of the injury inflicted on the victim was "a critical determining factor in this case." Workman contends the jury's submission of several questions demonstrated that the failure to define these terms caused the jury to "struggle[] with the difference between" CDVHAN and first-degree CDV. According to Workman, the trial court "effectively omitted [sub]section (B)(5) from the [first-degree CDV] statute and prevented the jury from properly considering the lesser included offense." We agree.

"[T]he purpose of jury instructions is to enlighten the jury as to what law is applicable to a certain state of facts in order that a just, fair[,] and proper verdict can be reached." *State v. Peer*, 320 S.C. 546, 554, 466 S.E.2d 375, 380 (Ct. App. 1996). "The trial court is required to charge only the current and correct law of South Carolina." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010). "The evidence presented at trial determines the law to be charged to the jury." *State v. Gilliland*, 402 S.C. 389, 400, 741 S.E.2d 521, 527 (Ct. App. 2012).

"The test for the sufficiency of a jury charge is what a reasonable juror would have understood the charge to mean." *State v. Benjamin*, 345 S.C. 470, 474, 549 S.E.2d 258, 260 (2001).

"It is error for the trial court to refuse to give a requested instruction [that] states a sound principle of law when that principle applies to the case at hand, and the principle is not otherwise included in the charge." *State v. Brandt*, 393 S.C. 526, 549-50, 713 S.E.2d 591, 603 (2011) (quoting *State v. Williams*, 367 S.C. 192, 195, 624 S.E.2d 443, 445 (Ct. App. 2005)). In most cases, "if the purpose is to enlighten the jury regarding the issues before it," reading "the jury a statute defining a crime with which the defendant is not charged" is not error. *State v. Leonard*, 292 S.C. 133, 137, 355 S.E.2d 270, 273 (1987). "When, however, the inclusion of the non-charged offense has the effect of confusing the issues the jury must determine, the statute should not be read to the jury." *Id.*

The supreme court has held a trial court erred in failing to give a defendant's requested charge that was a correct statement of the law when the trial court's given charge did not adequately cover the substance of the defendant's request. *State v. Kimbrell*, 294 S.C. 51, 56, 362 S.E.2d 630, 632 (1987). In *State v. Rye*, the supreme court reversed a conviction after the trial court's instructions on the

26

defenses raised addressed only one possible scenario when differentiating two defenses and another scenario also applied. 375 S.C. 119, 124-25, 651 S.E.2d 321, 324 (2007). The court explained, "Though [the trial court's instruction] was most of the picture, it was not the complete picture." *Id.* at 123, 651 S.E.2d at 323. In *State v. Ezell*, this court found instructing a jury on only one part of the statute defining an offense when the offense could be accomplished in multiple manners would have been error. 321 S.C. 421, 426, 468 S.E.2d 679, 681 (Ct. App. 1996) (per curiam).

Section 16-25-20(A) of the South Carolina Code provides, "It is unlawful to: (1) cause physical harm or injury to a person's own household member; or (2) offer or attempt to cause physical harm or injury to a person's own household member with apparent present ability under circumstances reasonably creating fear of imminent peril." S.C. Code Ann. § 16-25-20(A) (Supp. 2021). A defendant is guilty of first-degree CDV if in addition to violating section 16-25-20(A), at least one of the following occurs: "(1) great bodily injury to the [defendant's] own household member result[ed] or the act [was] accomplished by means likely to result in great bodily injury"; (2) the defendant committed second-degree CDV while violating an order of protection; (3) the defendant was previously convicted of CDV at least twice during the ten years preceding the current offense; (4) the defendant used a firearm; or (5) *the defendant committed second-degree CDV* (a) "in the presence of, or while being perceived by[,] a minor;" (b) against a person the defendant knew or should have known was pregnant; (c) "during the commission of a robbery, burglary, kidnapping, or theft;" (d) "by impeding the victim's breathing or air flow; or" (e) using physical force or the threat of force to block the victim's access to a phone to prevent the victim from reporting a crime or injury. S.C. Code Ann. § 16-25-20(B) (Supp. 2021). A "[g]reat bodily injury" is a "bodily injury [that] causes a substantial risk of death or [that] causes serious, permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ." S.C. Code Ann. § 16-25-10(2) (Supp. 2021).

A defendant is guilty of second-degree CDV if in addition to violating section 16-25-20(A), (1) moderate bodily injury resulted or the act was "accomplished by means likely to result in moderate bodily injury" to the defendant's own household member; (2) the defendant committed third-degree CDV while violating an order of protection; (3) the defendant was previously convicted of CDV once during the ten years prior to the current offense; or (4) the defendant committed third-degree CDV (a) "in the presence of, or while being perceived by, a minor;" (b) against a

person the defendant knew or should have known was pregnant; (c) "during the commission of a robbery, burglary, kidnapping, or theft;" (d) "by impeding the victim's breathing or air flow; or" (e) using physical force or the threat of force to block the victim's access to a phone to prevent the victim from reporting a crime or injury. S.C. Code Ann. § 16-25-20(C) (Supp. 2021). A "[m]oderate bodily injury" is a physical injury that causes prolonged loss of consciousness, temporary or moderate disfigurement, or temporary loss of the function of a bodily member or organ, or an injury that requires the use of regional or general anesthesia during treatment or "results in a fracture or dislocation." S.C. Code Ann. § 16-25-10(4) (Supp. 2021). "Moderate bodily injury does not include one-time treatment and subsequent observation of scratches, cuts, abrasions, bruises, burns, splinters, or any other minor injuries that do not ordinarily require extensive medical care." *Id.*

The trial court erred in its jury instruction on first-degree CDV by not defining second-degree CDV. Although the trial court's instruction was a correct statement of law, the jury likely would not have known what the trial court meant when it referenced second-degree CDV during the instruction. Because the trial court did not define second-degree CDV nor moderate bodily injury, the jury could not have understood subpart (A)(5) of the first-degree CDV statute. The evidence supported a jury instruction on the *definition* of second-degree CDV under section 16-25-20(B)(5) of the first-degree CDV statute. Additionally, because second-degree CDV uses the term moderate bodily injury, the court also should have given the statutorily provided definition of that term. Accordingly, the trial court erred in failing to give the definition of second-degree CDV.[1]

_____

[1] In its respondent's brief, the State contends it "did not present evidence or argue that [the victim] suffered moderate bodily injury" at trial and "whether her injuries met the statutory definition of moderate bodily injury" is questionable. The State provides it based its case on the "use of a gun and other facts showing an extreme indifference to the value of human life that would cause [the victim] to fear death or great bodily injury." It argues it "did not rely on [moderate bodily injury combined with other aggravating factors] in the presentation of its case. Instead, [it] presented evidence that [Workman] used guns while committing domestic violence." It therefore maintains that any instruction as to second-degree CDV was irrelevant and not at issue. However, in closing arguments at trial, in addition to asserting that Workman had used a firearm, the State also asserted the offense occurred in the presence of a minor and during the commission of a kidnapping. The State referenced those two conditions first in relation to the circumstances

## II. Harmless Error

The State argues that even if the trial court erred, any error was harmless because Workman cannot show prejudice as the jury found him guilty of the greater offense—CDVHAN[2]—and never reached first-degree CDV. The State asserts because the jury convicted Workman of CDVHAN, which it contends bears no relationship to moderate bodily injury or second-degree CDV, Workman has not

manifesting extreme indifference to the value of human life needed for CDVHAN and second as a method of proving first-degree CDV, under the basis of meeting the elements of second-degree CDV along with an aggravating factor. Accordingly, the State argued at trial it met the elements in ways other than the use of a firearm, and we disagree with its assertion that the disputed instruction was irrelevant and not at issue.

[2] First-degree CDV is a lesser included offense of CDVHAN. S.C. Code Ann. § 16-25-20(B). A defendant is guilty of CDVHAN if the defendant violated section 16-25-20(A) and "(1) commit[ted] the offense under circumstances manifesting extreme indifference to the value of human life and great bodily injury to the victim results;" "(2) commit[ted] the offense, with or without an accompanying battery and under circumstances manifesting extreme indifference to the value of human life, and would reasonably cause a person to fear imminent great bodily injury or death;" "or (3) violate[d] a protection order and, in the process of violating the order," committed first-degree CDV. S.C. Code Ann. § 16-25-65(A) (Supp. 2021). The statute contains a nonexclusive list of "[c]ircumstances manifesting extreme indifference to the value of human life," including "(1) using a deadly weapon;" "(2) knowingly and intentionally impeding the normal breathing or circulation of the blood of a household member by applying pressure to the throat or neck or by obstructing the nose or mouth of a household member and thereby causing stupor or loss of consciousness for any period of time;" "(3) committing the offense in the presence of a minor;" "(4) committing the offense against a person he knew, or should have known, to be pregnant;" "(5) committing the offense during the commission of a robbery, burglary, kidnapping, or theft;" or "(6) using physical force" to block the victim's access to a phone to prevent the victim from reporting a crime or injury. S.C. Code Ann. § 16-25-65(D) (Supp. 2021). The statute defines deadly weapon as "any pistol, dirk, slingshot, metal knuckles, razor, or other instrument [that] can be used to inflict deadly force." S.C. Code Ann. § 16-25-10(1) (Supp. 2021).

demonstrated reversible error. The State contends that "[b]ecause the jury found Workman guilty of the greater offense, any deficiency in the definition of the lower offense is harmless." We disagree.

"Errors, including erroneous jury instructions, are subject to harmless error analysis." *State v. Burdette*, 427 S.C. 490, 496, 832 S.E.2d 575, 578 (2019) (quoting *State v. Belcher*, 385 S.C. 597, 611, 685 S.E.2d 802, 809 (2009), *overruled on other grounds by Burdette*, 427 S.C. at 504 n.3, 832 S.E.2d at 583 n.3). "In making a harmless error analysis, [this court's] inquiry is . . . whether the erroneous charge contributed to the verdict rendered." *State v. Middleton*, 407 S.C. 312, 317, 755 S.E.2d 432, 435 (2014) (quoting *State v. Kerr*, 330 S.C. 132, 145, 498 S.E.2d 212, 218 (Ct. App. 1998)). "When considering whether an error with respect to a jury instruction was harmless, we must 'determine beyond a reasonable doubt that the error complained of did not contribute to the verdict.'" *Id.* (quoting *Kerr*, 330 S.C. at 144-45, 498 S.E.2d at 218).

The State relies on a case from the North Carolina Supreme Court in which that court found any error in the trial court's refusal to instruct the jury on voluntary manslaughter was harmless when the jury was instructed on the greater offenses of both first-degree and second-degree murder and convicted the defendant of first-degree murder. *State v. Bunnell*, 455 S.E.2d 426, 430-31 (N.C. 1995). The supreme court relied on a previous case, *State v. Shoemaker*, 432 S.E.2d 314, 324 (N.C. 1993), in which the trial court had instructed the jury on the same possible offenses and the defendant asserted he was entitled to a voluntary manslaughter charge. *Bunnell*, 455 S.E.2d 426 at 430. In *Shoemaker*, which in turn relied on a previous case, the supreme court had stated, "A verdict of murder in the first degree shows clearly that the jurors were not coerced, for they had the right to convict in the second degree. That they did not indicates their certainty of [the defendant's] guilt of the greater offense." 432 S.E.2d at 324 (quoting *State v. Freeman*, 170 S.E.2d 461, 465 (N.C. 1969)). The supreme court further stated, "The failure to instruct [the jurors] that they could convict of manslaughter therefore could not have harmed the defendant." *Id.* (quoting *Freeman*, 170 S.E.2d at 465).

However, in *State v. Wallace*, the North Carolina Supreme Court found a jury's convicting a defendant of *second-degree murder* did not cure the trial court's "error in failing to instruct [the jury] on involuntary manslaughter." 305 S.E.2d 548, 552 (N.C. 1983). The court noted it had previously stated that "when there is evidence

of guilt of the lesser charge, '[e]rroneous failure to submit the question of defendant's guilt of lesser degrees of the same crime is not cured by a verdict of guilty of the offense charged.'" *Id.* (alteration by court) (quoting *State v. Wrenn*, 185 S.E.2d 129, 132 (N.C. 1971)). The court held that "in such case, it cannot be known whether the jury would have convicted of a lesser degree if the different permissible degrees arising on the evidence had been correctly presented in the court's charge." *Id.* (quoting *Wrenn*, 185 S.E.2d at 132). The court provided that "[t]his is also true when the jury returns a verdict convicting the defendant of the highest offense charged, even though the conviction could have been of an intermediate offense." *Id.* But, the court noted "an error in an instruction on manslaughter may be cured by a verdict of murder in the first degree when there was a proper instruction as to murder in the first degree and murder in the second degree." *Id.*; *see also Freeman*, 170 S.E.2d at 464 ("Ordinarily, when the jury is instructed that it may find defendant guilty of murder in the first degree, murder in the second degree, manslaughter, or not guilty, and the verdict is guilty of murder in the second degree, an error in the charge on manslaughter will require a new trial. In such event[,] it cannot be known whether the verdict would have been manslaughter if the jury had been properly instructed. But where, as here, the jury was properly instructed as to both degrees of murder and yet found defendant guilty of murder in the first degree rather than the second degree, it is clear that error in the charge on manslaughter was harmless.").

Our supreme court has reversed convictions in which the trial court failed to charge a lesser included offense supported by the evidence, thus implicitly rejecting the theory that a jury's conviction of a higher offense shows the error was harmless. However, the supreme court has not explicitly ruled on harmlessness in these situations. In *State v. Lowry*, "[t]he trial [court] instructed the jury as to murder and self-defense, but declined to charge the jury as to voluntary manslaughter. Lowry was found guilty of murder," and this court affirmed. 315 S.C. 396, 398, 434 S.E.2d 272, 274 (1993). However, the supreme court reversed the conviction, finding the evidence supported a jury instruction on voluntary manslaughter. *Id.* at 399-400, 434 S.E.2d at 274. The supreme court noted that this court had improperly relied on *State v. Gandy*[3] "to support its conclusion that failure to

---

[3] *State v. Gandy* affirmed a defendant's conviction for murder when "[t]he trial [court] charged the jury on the law of murder and voluntary manslaughter" but not involuntary manslaughter. 283 S.C. 571, 573, 324 S.E.2d 65, 66-67 (1984), *implicitly overruled in part by Casey v. State*, 305 S.C. 445, 409 S.E.2d 391

31

charge voluntary manslaughter was harmless, because once the jury returned the verdict of murder, it had determined that the defendant had acted with malice, and thus could not have returned a verdict for the lesser offense." *Lowry*, 315 S.C. at 399-400, 434 S.E.2d at 274. The supreme court noted it had previously rejected this reasoning in *Casey*, in which it had expressly overruled in part *State v. Patrick*,[4] and implicitly overruled *Gandy*, upon which *Patrick* relied. *Lowry*, 315 S.C. at 399-400, 434 S.E.2d at 274. The *Lowry* court determined that "[e]ven though the jury was not convinced that Lowry acted in self-defense, the jury could have discerned, consistent with the evidence, that there was sufficient legal provocation and heat of passion to find Lowry guilty of voluntary manslaughter." *Id.* at 400, 434 S.E.2d at 274.

In *Bunnell*, the jury had the option of finding the defendant guilty of first-degree or second-degree murder or finding him not guilty, and the jury chose to convict of first-degree murder. In *Lowry*, the jury's only options were to find the defendant guilty of murder or not guilty. However, the South Carolina Supreme Court seemingly rejected applying harmless error even in a situation like *Bunnell* in its *Casey* opinion. In *Casey*, the trial court "refused Casey's request to charge the law of involuntary manslaughter; [it] did, however, charge the law of murder, voluntary manslaughter, accident[,] and self-defense. Casey was found guilty of murder . . . ." 305 S.C. at 446, 409 S.E.2d at 392. The supreme court initially affirmed the refusal to charge involuntary manslaughter on the basis that "[t]he

---

(1991). The court noted because the jury convicted the defendant of murder, it necessarily found malice present at the time of the killing and "both [voluntary and involuntary manslaughter] are distinguished from murder because the vital element of malice is missing." *Id.*

[4] In *State v. Patrick*, our supreme court affirmed a defendant's conviction for murder even though the trial court incorrectly blended the elements of voluntary and involuntary manslaughter during the jury charge, when the court clearly instructed the jury that manslaughter was distinguished from murder by the absence of malice, because the jury, by returning a verdict of murder—which necessarily included a finding of malice—determined the defendant acted with malice and therefore "it could not have returned a verdict for manslaughter, voluntary or involuntary." 289 S.C. 301, 306, 345 S.E.2d 481, 484 (1986), *overruled in part by Casey v. State*, 305 S.C. 445, 409 S.E.2d 391 (1991), and *overruled on other grounds by Brightman v. State*, 336 S.C. 348, 520 S.E.2d 614 (1999).

32

jury returned a verdict of murder, which, necessarily embraced a finding of malice." *Casey v. State*, Op. No. 23402 (S.C. Sup. Ct. filed May 20, 1991) (Davis Adv. Sh. No. 13 at 13, 14-15), *vacated*, 305 S.C. 445, 446, 409 S.E.2d 391, 391 (1991). The initial opinion found because "the jury determined that Casey acted with malice, 'it could not have returned a verdict for manslaughter, voluntary *or involuntary*.'" *Id.* (emphasis added by court) (quoting *Patrick*, 289 S.C. at 306, 345 S.E.2d at 484). The initial opinion held, "*Patrick* and *Gandy* are consistent with decisions in a majority of jurisdictions [that] hold that, when a defendant has been convicted of murder, the correctness of instructions relating to manslaughter becomes immaterial." *Id.* at 15. The supreme court quoted an opinion from the Supreme Court of Kansas that stated "where the jury, under proper instruction, have found a defendant guilty of every element of the *superior* offense, erroneous instructions, or a total failure to instruct, with reference to an offense *inferior* in degree, and including less criminality cannot, logically, be said to have influenced the jury." *Id.* (emphasis added by court) (quoting *State v. Metcalf*, 452 P.2d 842, 845 (Kan. 1969)). The court further quoted, "The failure of the court can only be said to be prejudicial to the defendant on the theory that the jury failed to fully comprehend the definition of the superior degree, or misconstrued and misapplied the law to the facts." *Id.* (quoting *Metcalf*, 452 P.2d at 845). Additionally, the court stated, "To indulge in such presumptions, even though we know that mistakes are made by juries and courts alike, is to overturn the whole theory of the administration of justice." *Id.* (quoting *Metcalf*, 452 P.2d at 845). The vacated *Casey* opinion thus found the trial court's failure to instruct the jury on involuntary manslaughter did not prejudice the defendant. *Id.*

Subsequently, the supreme court vacated its prior opinion and substituted a new opinion in its place. *Casey*, 305 S.C. at 446, 409 S.E.2d at 391. The substituted opinion reversed the trial court's refusal to instruct the jury on involuntary manslaughter. *Id.* at 447, 409 S.E.2d at 392. In the substituted opinion, the supreme court found "testimony supports an involuntary manslaughter charge. Accordingly, the trial court erred in refusing the charge, and the case is reversed and remanded for a new trial." *Id.* The substituted *Casey* opinion did not mention harmless error or discuss prejudice.

Other states have expressly determined when the trial court has failed to charge a lesser included offense in similar situations such error is not harmless simply

because the jury convicted a defendant of the higher offense.[5] Many courts have recognized a distinction in finding harmless error that hinges on whether the jury is charged with an intermediate offense or not. A few states have gone further in noncapital[6] cases to find even if the jury is not instructed on an intermediate charge, the error can still be harmless.[7] However, most states distinguish between

---

[5] Unlike the present case, most of these cases involve degrees of murder and manslaughter.

[6] In *Beck v. Alabama*, the United States Supreme Court held unconstitutional in capital cases a statute that prohibited instructing the jury on lesser included offense instructions supported by the evidence. 447 U.S. 625 (1980). The Court noted "forcing the jury to choose between conviction on the capital offense and acquittal" could "encourage the jury to convict for an impermissible reason—its belief that the defendant is guilty of some serious crime and should be punished," even when the jury has "some doubt with respect to an element" of the offense. *Id.* at 632, 637, 642; *see also Keeble v. United States*, 412 U.S. 205, 212-13 (1973) (finding when "the jury was presented with only two options: convicting the defendant of [the charged offense] or acquitting him outright" it could not "say that the availability of a third option . . . could not have resulted in a different verdict" because when "one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction"). In a subsequent case, the Court explained, "Because the scheme in *Beck* created a danger that the jury would resolve any doubts in favor of conviction, we concluded that it violated due process." *Bobby v. Mitts*, 563 U.S. 395, 397 (2011) (citing *Beck*, 447 U.S. at 638, 643). However, the *Beck* Court expressly declined to address the issue of whether the Due Process Clause mandates instructing the jury on lesser included offenses in noncapital cases. *Beck*, 447 U.S. at 638 n.14; *see also Schad v. Arizona*, 501 U.S. 624, 646 (1991) (differentiating *Beck* from a case in which "the jury . . . was given the option of finding [the defendant] guilty of a lesser included noncapital offense"), *overruled on other grounds by Ramos v. Louisiana*, 140 S. Ct. 1390 (2020).

[7] "Some courts have gone even farther, finding harmless error even when no intermediate instruction was offered." *Mata-Medina v. People*, 71 P.3d 973, 983 (Colo. 2003) (en banc); *id.* (noting the Hawaii Supreme Court did not require an intermediate instruction based on the reasoning that "jurors are presumed to follow the court's instructions," to determine that in arriving at a verdict on the charged offense, the jury would not have reached the lesser offense the trial court

the two situations.  Additionally, some courts have seemed to find an error in failing to charge the jury with a lesser included offense supported by the evidence can never be harmless.[8]

One state that has distinguished these situations in several cases is Tennessee.  The Tennessee Supreme Court has held, "Omitting an instruction on a lesser-included offense denies the jury the option of rejecting a greater offense in favor of a lesser offense." *State v. Allen*, 69 S.W.3d 181, 189 (Tenn. 2002).  That court has further explained, "The omission precludes the jury from finding that the element distinguishing the greater offense from the lesser offense was not proven beyond a reasonable doubt and that the defendant is therefore guilty of the lesser offense." *Id.* at 189-90.  The court noted it had found an "error may be harmless when the jury, by finding the defendant guilty of the highest offense *to the exclusion of the immediately lesser offense*, necessarily rejected all other lesser-included offenses." *Id.* at 189 (emphasis added) (citing *State v. Williams*, 977 S.W.2d 101, 106 (Tenn. 1998)).  However, the supreme court distinguished that situation from a situation in which the jury convicted the defendant of the only lesser included offense instructed, noting that in the latter case, "the jury . . . did not reject an intermediate offense." *Allen*, 69 S.W.3d at 189.  The court has emphasized the *Williams* analysis is used when the jury has rejected the immediately lesser offense but not when the jury was given no option to convict of any lesser included offense. *Moore v. State*, 485 S.W.3d 411, 421-22 (Tenn. 2016).  In *Williams*, the Tennessee Supreme Court pointed to numerous cases from that state as well as fifteen other states holding a trial court's error in not charging the jury on a lesser included offense was harmless when the jury had the option of convicting a defendant of an intermediate lesser included offense but instead convicted of the higher offense. 977 S.W.2d at 106-08.

Colorado is another state that has examined similar situations.  In *Gallegos v. People*, the Colorado Supreme Court held "[t]he refusal of the trial court to instruct the jury on the lesser degrees of the alleged crime is error, requiring. . . a new

---

erroneously failed to charge (quoting *State v. Pauline*, 60 P.3d 306, 331 (Haw. 2002))).

[8] *Commonwealth v. Covil*, 378 A.2d 841, 843-44 (Pa. 1977) (finding the "denial of a voluntary manslaughter instruction [wa]s not harmless error simply because the jury returned a verdict of murder of the first degree" and had the option of convicting the defendant of murder of the second degree).

trial," when the trial court charged the jury only on first-degree murder and not second-degree murder or manslaughter, despite evidence supporting the lesser offenses. 316 P.2d 884, 884 (Colo. 1957). In *Mata-Medina*, the Colorado Supreme Court noted *Gallegos* was not instructive in cases "in which the jury received an intermediate offense instruction and declined to convict on that charge." 71 P.3d at 980. The Colorado Supreme Court distinguished the situation in *Gallegos* from the one in which "[c]ourts across the country agree that jury convictions for a certain charged offense inherently constitute a rejection of *offered* lesser offenses, or findings that the defendant was necessarily guilty of lesser included offenses." *Id.* at 982 (emphasis added); *id.* at 983 ("[C]ourts throughout the country that have considered the issue have concluded that a jury's *rejection of an intermediate* offense constitutes an implicit rejection of omitted lesser offenses." (emphasis added)); *see also id.* at 980, 983 (finding an error harmless when the "jury receive[d] an instruction on an intermediate offense and decline[d] to render a conviction on that offense" because by doing so, the jury implicitly rejected the uncharged lesser included offense).

The situation here is not exactly like *Bunnell* or *Lowry*. In the present case, the trial court charged a lesser included offense, but that charge was incomplete. Although, the jury had the options of finding Workman guilty of CDVHAN, guilty of the lesser included offense of first-degree CDV, or finding him not guilty, the instruction for first-degree CDV was incomplete. In the *Lowry* and *Casey* cases, if the supreme court had agreed with the harmless error theory expressed by the State, it could have found the error in giving the lesser jury instruction harmless and affirmed the convictions instead of reversing them. *See also State v. Crosby*, 355 S.C. 47, 584 S.E.2d 110 (2003) (reversing a voluntary manslaughter conviction when the trial court denied the defendant's request to charge involuntary manslaughter); *State v. Knoten*, 347 S.C. 296, 309, 555 S.E.2d 391, 398 (2001) ("Because there was evidence . . . supporting a conviction for the lesser included offense of voluntary manslaughter, we reverse Appellant's conviction [of murder]."). Because the supreme court has not opted to find the failure to give instructions harmless when the jury convicted of the higher offense, we will not find the error in failing to give a complete charge on the lesser offense harmless here. Accordingly, the trial court's error in giving an incomplete charge on first-degree CDV was not harmless despite the jury's conviction of Workman of the offense of CDVHAN.

**CONCLUSION**

The trial court erred in its jury charge on first-degree CDV by not defining second-degree CDV and moderate bodily injury.  Additionally, that error was not harmless.  Accordingly, Workman's conviction for CDVHAN is

**REVERSED AND REMANDED.**

**HILL and HEWITT, JJ., concur.**